DERRICK BARRINGER, as Administrator of the Estate of DRAKE BARRINGER, Plaintiff v. WAKE FOREST UNIVERSITY BAPTIST MEDICAL CENTER, MICHAEL H. HINES, MD, WAKE FOREST UNIVERSITY PHYSICIANS, NORTH CAROLINA BAPTIST HOSPITAL, and WAKE FOREST UNIVERSITY, Defendants

No. COA08-269

(Filed 2 June 2009)

## 1. Medical Malpractice— doctor's affidavit—stricken—no prejudice

The trial court did not abuse its discretion by striking a doctor's affidavit in a medical malpractice action where plaintiff did not show prejudice; on the contrary, plaintiff stated that the affidavit simply re-affirmed the expert opinions previously set forth in a deposition.

## 2. Medical Malpractice— proposed expert—basis of opinion—undeveloped

A medical malpractice case was remanded for a *voir dire* to determine the admissibility of a proposed medical expert's testimony where the basis of the doctor's opinion that defendants breached the standard of care was undeveloped.

## 3. Medical Malpractice— motion to compel discovery denied—no basis stated—presumptions—no abuse of discretion

The trial court did not abuse its discretion in a medical malpractice action by denying plaintiff's motions to compel discovery. The record was completely silent as to the basis for the denial and the court is presumed to have made findings supported by competent evidence and orders supported by the findings.

## 4. Medical Malpractice— Rule 9(j)—procedural mechanism

It was noted in a medical malpractice action that Rule 9(j) does not provide a procedural mechanism for a defendant to file a motion to dismiss; the Rules of Civil Procedure provide other methods by which a defendant may allege a violation of Rule 9(j).

## 5. Medical Malpractice— Rule 9(j)—summary judgment

One superior court judge did not overrule another by granting summary judgment for defendants on a medical malpractice claim pursuant to Rule 9(j) where a first judge had previously denied a motion to dismiss under Rule 9(j). Compliance with Rule 9(j) presents a question of law, and the first judge did not convert the motion into one for summary judgment by considering mat-

BARRINGER v. WAKE FOREST UNIV. BAPTIST MED. CTR.

[197 N.C. App. 238 (2009)]

ters outside the pleadings. Moreover, even if the first motion became one for summary judgment, the issue there was whether the witnesses were reasonably expected to qualify as experts while the issue in the second motion was whether the witnesses in fact qualified as experts.

**6. Medical Malpractice— not transferring patient—summary judgment**

The trial court did not err in a medical malpractice action by granting summary judgment for defendants on a claim of negligence in not transferring a patient to another facility. This allegation was added in an affidavit after the witness's deposition, is inconsistent with the prior sworn testimony, and does not create a genuine issue of fact. Moreover, plaintiff's other expert testified that there was no standard of care on the issue of transferring the patient to another hospital.

**7. Medical Malpractice— plaintiff's expert—no personal experience of procedures—not qualified to testify**

The trial court did not err in a medical malpractice action by granting summary judgment for defendants on claims which depended upon expert testimony that Dr. Hines was negligent in failing to order a particular test. Plaintiff's expert had never performed the relevant surgical procedures and was not qualified to testify that those procedures were performed incorrectly.

**8. Appeal and Error— assignments of error—not supported by authority—abandoned**

Assignments of error not supported by authority were deemed abandoned.

**9. Medical Malpractice— doctor's testimony limited—not effectively a directed verdict**

Plaintiff mischaracterized the court's action in a medical malpractice claim as effectively granting a directed verdict when the court limited the testimony of a doctor regarding certain claims. It was undisputed that the witness had never performed the procedures in question and was not qualified to testify that the standard of care had been breached.

**10. Medical Malpractice— punitive damages—corporate defendant—directed verdict**

There was no prejudice in a medical malpractice action where the trial court entered a directed verdict for defendants on

plaintiff's claim for punitive damages against the corporate defendants; even if the physician was the head of the treatment team, and even if the head of the treatment team was a manager, the jury did not find that the physician was negligent.

**11. Appeal and Error— record—entire instruction not included**

An assignment of error concerning the denial of a request for a special instruction was not properly presented for appellate review where the record did not include a transcript of the entire charge. This is important because the record is received by all three members of the Court of Appeals panel, while the only single copy of the transcript is filed. Even though the record in this case contained the instruction given in response to a jury question, this portion of the charge was not sufficient to allow review of the charge in its entirety.

Appeal by Plaintiff from orders entered 8 September 2006 and 22 March 2007 by Judge A. Moses Massey; from order entered 18 May 2007 by Judge R. Stuart Albright; and from judgment entered 13 June 2007 by Judge R. Stuart Albright in Forsyth County Superior Court. Heard in the Court of Appeals 6 October 2008.

*Kennedy, Kennedy, Kennedy & Kennedy, L.L.P., by Harvey L. Kennedy and Harold L. Kennedy, III, for Plaintiff-Appellant.*

*Wilson & Coffey, L.L.P., by Tamura D. Coffey, J. Chad Bomar, and Lorin J. Lapidus, for Defendants-Appellees.*

STEPHENS, Judge.

In this medical malpractice action, Plaintiff appeals following a jury verdict which found that Defendants were not negligent in their treatment of Plaintiff's infant son, Drake Barringer, who died seven months after his birth. We reverse and remand with instructions.

*Background*

Through counsel, Plaintiff initiated an action on 23 December 2003 by filing a complaint against Defendants Wake Forest University Baptist Medical Center, Wake Forest University Physicians, North Carolina Baptist Hospital, and Wake Forest University (collectively, "corporate Defendants"), and Michael H. Hines, M.D., Karen H. Raines, M.D., and R. Mark Payne, M.D. Defendants answered the complaint on 18 March 2004, but the action subsequently was dismissed.

Plaintiff re-filed the complaint *pro se* on 21 October 2005. Defendants' filed an answer on 19 December 2005. On 16 February 2006, the law firm of Kennedy, Kennedy, Kennedy and Kennedy, L.L.P., which did not prepare the initial complaint, filed a notice of appearance as Plaintiff's counsel. The trial court subsequently allowed Plaintiff to amend the complaint. The complaint, as amended, contained the following allegations:

Drake was born to Plaintiff and Plaintiff's wife on 13 May 2001. On 18 May 2001, Dr. Hines, a pediatric cardiothoracic surgeon at Baptist Hospital, diagnosed Drake with tetralogy of Fallot, one symptom of which is a ventricular septal defect ("VSD"). Dr. Hines recommended that Drake undergo heart surgery to repair the VSD. Plaintiff asked Dr. Hines about the propriety of conducting a preoperative cardiac catheterization on Drake in order to determine if the operation was necessary. Dr. Hines advised the Barringers that Drake was too "young" for a catheterization and that Drake would not survive such a procedure. The Barringers consented to the surgery. Without ordering a preoperative transesophogeal echocardiogram ("TEE"), Dr. Hines operated on Drake on 27 June 2001. Dr. Hines did not order an intraoperative or postoperative TEE to determine whether the VSD had been repaired. Drake did not recover as expected from the surgery.

The complaint further alleged that Drake underwent an echocardiogram on 5 July 2001 and that Dr. Raines, a pediatric cardiologist, "failed to accurately interpret the echocardiogram." On 9 July 2001, Drake underwent a cardiac catheterization. On 10 July 2001, Dr. Hines performed a second operation on Drake. As before, Drake did not undergo an intraoperative or postoperative TEE. As before, Drake did not recover as expected from the surgery.

Finally, the complaint alleged that Drake underwent another echocardiogram on 14 July 2001, and that Dr. Payne, a pediatric cardiologist, "failed to accurately interpret the echocardiogram." Dr. Hines performed a third operation on Drake on 16 August 2001. The complaint alleged that, under the circumstances, the procedure performed by Dr. Hines "was not the correct procedure to perform." Drake died at Baptist Hospital on 26 December 2001.

On these allegations, Plaintiff asserted that Defendants were negligent in providing medical care and treatment to Drake. Specifically, Plaintiff alleged as follows:

1. Dr. Hines was negligent in failing to order a TEE before the first surgery;

2. Dr. Hines was negligent in failing to order TEEs during or after the first and second surgeries;

3. Dr. Hines was negligent in failing to order an echocardiogram or catheterization in a timely manner following the first surgery;

4. Dr. Hines was negligent in failing to transfer Drake to another facility after the second surgery;

5. Dr. Hines was negligent in failing to perform the correct procedure during the third surgery;

6. In advising the Barringers that Drake would not survive a catheterization before the first surgery, Dr. Hines obtained the Barringers' consent by "fraud, deception[,] and a misrepresentation of a material fact," and, therefore, Dr. Hines was negligent in performing the first operation on Drake without the Barringers' informed consent.

7. Dr. Raines and Dr. Payne were negligent in failing to properly interpret the echocardiograms.

Plaintiff advanced each of these claims against the corporate Defendants under the theory of vicarious liability, and Plaintiff sought compensatory and punitive damages on the claims.

In a discovery scheduling order, the trial court set the matter for trial on 21 May 2007 and ordered all discovery to be completed by 13 April 2007. The trial court did not designate a date by which the parties were required to file all dispositive motions. Pursuant to the order, Plaintiff designated pediatric cardiothoracic surgeon Ralph S. Mosca and pediatric cardiologist Arthur S. Raptoulis as the experts who would testify at trial. On 31 July 2006, Plaintiff filed the doctors' affidavits, both of which stated that the medical care provided to Drake "was not in accordance with the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time the health care was rendered."

On 4 August 2006, Plaintiff filed a motion to compel discovery. On 8 September 2006, the trial court allowed the motion in part and denied the motion in part.

Defendants deposed Plaintiff's experts in November and December 2006. In his deposition, Dr. Mosca testified that Dr. Hines

breached the standard of care by (1) performing the first surgery, because surgery was not indicated for a patient of Drake's age, (2) failing to properly diagnose Drake's condition prior to performing the first surgery, and (3) failing to transfer Drake to another hospital after the second surgery. In his deposition, Dr. Raptoulis testified that Dr. Hines breached the standard of care by (1) failing to properly interpret an echocardiogram before the first surgery, (2) failing to order a TEE before, during, or after the first surgery, and (3) improperly obtaining the Barringers' consent to perform the first surgery. On 12 December 2006, Plaintiff voluntarily dismissed Dr. Raines and Dr. Payne from the action without prejudice.

On or about 6 March 2007, Plaintiff filed a motion to reconsider the 8 September 2006 order which denied in part Plaintiff's motion to compel discovery. In the motion to reconsider, Plaintiff sought to discover, *inter alia*, the names and addresses of all patients who died while under Dr. Hines' care between 1 January 1995 and 26 December 2001. By order entered 22 March 2007, the trial court denied Plaintiff's motion to reconsider.

On 9 March 2007, Defendants filed a motion to dismiss Plaintiff's complaint "pursuant to Rule 9(j) and Rule 41(b) of the North Carolina Rules of Civil Procedure." In the motion, Defendants asserted that Plaintiff could not have had a reasonable expectation that either Dr. Mosca or Dr. Raptoulis would qualify as expert witnesses. Defendants also asserted that "[b]ecause neither of [P]laintiff's experts is qualified to testify against [D]efendants at the trial of this matter, [P]laintiff can offer no expert opinion as to the standard of care which is required by N.C. Gen. Stat. [§] 90-21.12." The trial court, Judge A. Moses Massey presiding, conducted a hearing on Defendants' motion on 16 March 2007 and denied the motion by order entered 22 March 2007.

On or about 29 March 2007, Defendants filed a motion for summary judgment "pursuant to Rule 56 of the North Carolina Rules of Civil Procedure[.]" In the motion, Defendants asserted that "[b]ecause neither of [P]laintiff's experts is qualified to testify at the trial of this matter, [P]laintiff can offer no expert opinion as to the standard of care which is required by N.C. Gen. Stat. [§] 90-21.12." On 23 April 2007, Plaintiff filed a motion to strike and dismiss Defendants' motion for summary judgment on the ground that the motion was "identical" to the motion to dismiss filed 9 March 2007.

On or about 25 April 2007, Plaintiff filed a second affidavit of Dr. Raptoulis in which he averred, *inter alia*, that Defendants were neg-

ligent "through their employee, Dr. Wesley Covitz," in that Dr. Covitz mis-diagnosed Drake's condition.[1] On 15 May 2007, Plaintiff filed a third affidavit of Dr. Raptoulis in which he averred that Dr. Hines breached the standard of care by advising the Barringers before Drake's first surgery that Drake would not survive a catheterization. On 7 May 2007, Plaintiff filed a second affidavit of Dr. Mosca in which he averred, *inter alia*, that he was familiar with the standard of care in communities similar to Winston-Salem. On 3, 7, and 16 May 2007, Defendants filed motions to strike these affidavits on the ground that the affidavits contradicted the doctors' deposition testimony.

The trial court, Judge R. Stuart Albright presiding, subsequently conducted a hearing on (1) Plaintiff's motion to dismiss Defendants' motion for summary judgment, (2) Defendants' motions to strike Plaintiff's affidavits, and (3) Defendants' motion for summary judgment. In three orders entered 18 May 2007, the trial court (1) denied Plaintiff's motion to dismiss Defendants' motion for summary judgment, (2) granted Defendants' motion to strike Dr. Mosca's 7 May 2007 affidavit, and (3) granted Defendants' motion to strike Dr. Raptoulis' 25 April 2007 affidavit only to the extent that the affidavit referred to the alleged negligence of Dr. Covitz. In a fourth order entered that day, the trial court granted Defendants' motion for summary judgment on (1) all claims which depended on the testimony of Dr. Mosca, (2) the claim that Defendants negligently failed to transfer Drake to another facility, (3) all claims which depended on the testimony of Dr. Raptoulis concerning the performance of any action taken during surgery, and (4) all claims based on the negligence of Dr. Covitz. The court denied Defendants' motion as to:

1. Dr. Hines' alleged failure to interpret the 18 May 2001 echocardiogram correctly;

2. Dr. Hines' alleged failure to perform additional diagnostic studies prior to the first surgery;

3. Dr. Hines' alleged failure to obtain the Barringers' informed consent prior to the first surgery; and

4. Dr. Hines' alleged failure to obtain further diagnostic studies following the first surgery.

The case proceeded to trial on these remaining issues.

At trial, Dr. Raptoulis testified that Dr. Hines breached the standard of care by telling the Barringers that Drake would not survive a

---

1. Dr. Covitz was never a named Defendant in this action.

catheterization before the first surgery. Plaintiff's counsel then asked Dr. Raptoulis whether that breach was a "direct or proximate cause of the multiple surgeries and subsequent death of Drake[.]" Defendants' counsel objected, and the trial court heard extensive *voir dire* testimony. At the conclusion of the hearing, the trial court ruled that while Dr. Raptoulis could testify that Dr. Hines breached the standard of care in advising the Barringers that Drake would not survive a pre-surgery cardiac catheterization and that the failure to perform the cardiac catheterization was a proximate cause of Drake's death, Dr. Raptoulis could not testify that Dr. Hines breached the standard of care in failing to perform additional diagnostic studies prior to or after the first surgery.

At the conclusion of Plaintiff's evidence, the trial court granted Defendants' motion for a directed verdict on Plaintiff's claim for punitive damages "as to the corporate [D]efendants[,]" but denied the motion "with regard to Dr. Hines." Following the presentation of Defendants' evidence, the court submitted the following issue to the jury: "Was the death of Drake Barringer caused by the negligence of [Defendants], by and through the actions of Dr. Hines?" The jury answered this question in the negative, and the court entered judgment in Defendants' favor on 13 June 2007. Plaintiff timely appealed.

## I. SUMMARY JUDGMENT—DR. MOSCA

We first address Plaintiff's argument that the trial court erred in granting summary judgment on all claims that were dependent on Dr. Mosca's testimony. Plaintiff argues that summary judgment was improper on these claims because (1) Dr. Mosca stated in his 31 July 2006 affidavit that Defendants breached "the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time the health care was rendered[,]" (2) Dr. Mosca testified in his deposition that he was familiar with the national standard of care and that there was no difference between a national standard and the same or similar community standard, (3) Dr. Mosca testified in his deposition that he was familiar with the standard of care in communities similar to Winston-Salem, and (4) Dr. Mosca sufficiently stated in his 7 May 2007 affidavit that he was familiar with the applicable standard of care.

[1] Initially, we note that the trial court struck and did not consider Dr. Mosca's 7 May 2007 affidavit when ruling on Defendants' motion for summary judgment. Plaintiff asserts that the court "committed

prejudicial error" in striking the affidavit because the affidavit "did not contradict any prior opinions set forth in [Dr. Mosca's] deposition[.]" We review an order striking an affidavit for abuse of discretion. *Blair Concrete Servs., Inc. v. Van-Allen Steel Co.*, 152 N.C. App. 215, 219, 566 S.E.2d 766, 768 (2002). The appellant must show not only that the trial court abused its discretion in striking an affidavit, but also "that prejudice resulted from that error." *Miller v. Forsyth Mem'l Hosp., Inc.*, 174 N.C. App. 619, 620, 625 S.E.2d 115, 116 (2005) (citing *Bowers v. Olf*, 122 N.C. App. 421, 427, 470 S.E.2d 346, 350 (1996)). "This Court will not presume prejudice." *Id.*

Even if the trial court abused its discretion in striking the affidavit,[2] Plaintiff in no way explains how he was prejudiced by the trial court's action. On the contrary, Plaintiff states that the 7 May 2007 affidavit "simply re-affirmed the expert opinions previously set forth in [Dr. Mosca's] deposition." We thus conclude that Plaintiff has not met the heavy burden of showing that the trial court erred in striking the affidavit, and we will not consider the affidavit's contents in reviewing the grant of summary judgment on all claims which depended on Dr. Mosca's testimony. Our review is limited to Dr. Mosca's 31 July 2006 affidavit and deposition testimony.

**[2]** In a medical malpractice action, "a plaintiff has the burden of showing '(1) the applicable standard of care; (2) a breach of such standard of care by the defendant; (3) the injuries suffered by the plaintiff were proximately caused by such breach; and (4) the damages resulting to the plaintiff.'" *Purvis v. Moses H. Cone Mem'l Hosp. Serv. Corp.*, 175 N.C. App. 474, 477, 624 S.E.2d 380, 383 (2006) (quoting *Weatherford v. Glassman*, 129 N.C. App. 618, 621, 500 S.E.2d 466, 468 (1998)). "To meet [the] burden of proving the applicable standard of care, [a plaintiff] must satisfy the requirements of N.C.G.S. § 90-21.12 . . . ." *Crocker v. Roethling*, 363 N.C. 140, 142, 675 S.E.2d 625, 628 (2009). Section 90-21.12 states as follows:

> In any action for damages for personal injury or death arising out of the furnishing or the failure to furnish professional services in the performance of medical, dental, or other health care, the defendant shall not be liable for the payment of damages unless the trier of the facts is satisfied by the greater weight of the evidence that the care of such health care provider was not in accordance with the standards of practice among members of the same health care profession with similar training and experience

---

2. *But see* Part II.A, below.

situated in the same or similar communities at the time of the alleged act giving rise to the cause of action.

N.C. Gen. Stat. § 90-21.12 (2005).

When plaintiffs have introduced evidence from an expert stating that the defendant doctor did not meet the accepted medical standard, "[t]he evidence forecast by the plaintiffs establishes a genuine issue of material fact as to whether the defendant doctor breached the applicable standard of care and thereby proximately caused the plaintiffs' injuries."

*Crocker*, 363 N.C. at 142-43, 675 S.E.2d at 628 (quoting *Mozingo v. Pitt Cty. Mem'l Hosp., Inc.*, 331 N.C. 182, 191, 415 S.E.2d 341, 346 (1992)). "This issue is ordinarily a question for the jury, and in such case, it is error for the trial court to enter summary judgment for the defendant." *Id.* We review a trial court's ruling on summary judgment *de novo. In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008).

The sole issue raised by this argument is whether Dr. Mosca was sufficiently familiar with the applicable standard of care. It is undisputed that Dr. Mosca was otherwise qualified to offer expert testimony against Defendants. We agree that Dr. Mosca's 31 July 2006 affidavit speaks in the language of N.C. Gen. Stat. § 90-21.12. However, Dr. Mosca's subsequent deposition testimony presents a close question as to whether Dr. Mosca was indeed sufficiently familiar with the applicable standard of care. In response to Defendants' counsel's questions, Dr. Mosca seemed to state that Defendants breached a national standard of care:

Q. First of all, you understand, Dr. Mosca, that in order to be held responsible for medical negligence there must have been a breach of the applicable standard of care for a surgeon like Dr. Hines in his community, correct?

A. Yes, although I'll also admit I'm not sure exactly what those things mean from place to place and time to time. I think it's a little nebulous in the medical community. I have a general idea of what I think should be done.

Q. Let's follow up on that for just a minute.

Tell me how you are defining the standard of care for purposes of reviewing Dr. Hines['] care.

A. I think I did already but I'll repeat it and that is having now worked in two or three major medical centers and dealing on a daily, monthly, whatever basis with other people who perform many of these operations, the way we do it is pretty·much similar across different institutions.

And what I'm telling you is having said that and talked to them and been to the national meetings and reading the literature and reviewing the literature, that it seems to me that that[,] as far as medicine goes[,] would have to be considered the standard of care.

Q. To more simply put that, are you applying a standard of care for national major medical centers to Dr. Hines?

A. Well, anybody, I think, who does these type of surgeries, in my opinion should apply the care that they can get at major medical centers, yes.

Q. And is that a national standard of care in your opinion?

A. In my opinion, yes.

But again, we don't have defined standard of cares in medicine. That I know of.

Q. But in your opinion, you are applying a national standard of care, correct?

A. I guess the answer is yes.

I'm trying to generalize for what I think surgeons who do this on a regular basis would say is reasonable.

Q. Do you recognize that there is a difference between a true breach of the standard of care and what physicians may differ about and what may therefore be called a matter of physician judgment?

A. I believe so, yes.

Q. And you understand the difference between those two concepts?

A. I do. I think the difference is really generated by the overwhelming opinion of people who do it a lot. That's what I'm trying to use as my yardstick.

BARRINGER v. WAKE FOREST UNIV. BAPTIST MED. CTR.

[197 N.C. App. 238 (2009)]

In response to Plaintiff's counsel's questions, Dr. Mosca seemed to state that Defendants breached the standard of care in communities similar to Winston-Salem:

Q. I just want to touch briefly on the standards of practice.

I want to ask you first of all: Are you familiar with the Durham medical community, Durham North Carolina medical community, they call it Duke University Medical Center?

A. I'm familiar with Duke University, North Carolina Chapel Hill, with Wake Forest, insofar as I know that they are—exist and who works there. And again, I visited the area. I went to school in the area, but as far as actually visiting the medical centers, it's rare.

Q. But have you been to the medical center at Wake Forest University?

A. Yes.

Q. And do you consider the Durham Medical Community, Duke University Medical Community similar to the medical community in Winston-Salem?

A. I would say yes, they're about the same size and offer the same care.

Q. Do you consider the medical community in Ann Arbor, Michigan to be similar to the medical community in Winston-Salem?

A. I think Ann Arbor Michigan—are you speaking of the pediatric surgery program or just the community in general.

Q. Just the community in general.

A. I think they're similar towns with similar medical communities, yes.

Q. What about the medical community in Syracuse, New York?

A. I would say yes.

Q. I believe you said your brother lives in Charlotte, North Carolina, you visit him now and then?

A. Yes.

Q. Do you consider the medical community in Charlotte, North Carolina to be similar to the medical community in Winston-Salem?

A. I would have to say I'm not all that familiar with the hospital, so it would be hard for me to make a determination on that.

Q. You also indicated that you do some work in New Jersey, is that right?

A. Yes.

Q. What city in New Jersey?

A. New Brunswick, New Jersey.

Q. Do you consider that medical community to be similar to the medical community in Winston-Salem?

A. That medical community is, it's a smaller environment, but surrounded by a large population. So I would say that there are ways that they are very similar, yes.

Q. I want to go back then and ask you, in terms of your opinions on the violation of the standard of care, whether back in 2001, whether you would have been familiar with the standards of care, standards of practice in Winston-Salem, North Carolina or similar communities for pediatric cardiac thoracic surgery?

A. Again, if we draw the analogy of medical centers that you've mentioned to Winston-Salem, then I believe I would be familiar.

But I did not live or work in Winston-Salem so I'm not sure exactly what the standard of care was. But if it's similar to those others then I would say it should be, yes.

Considering this testimony in the light most favorable to Plaintiff, as we must, we conclude that the basis of Dr. Mosca's opinion that Defendants breached the standard of care is "undeveloped." *Crocker*, 363 N.C. at 147, 675 S.E.2d at 631.

While Dr. Mosca *seemed* to testify that he was applying a national standard of care in response to Defendants' counsel's questions, Defendants' counsel never asked, and Dr. Mosca never testified, that such national standard of care applied in Winston-Salem in 2001. Additionally, while Dr. Mosca *seemed* to testify that he was applying the standard of care in communities similar to Winston-Salem in

response to Plaintiff's counsel's questions, he also expressed doubt as to whether Winston-Salem was indeed similar to the communities with which he was familiar. This is, thus, a "close case[]."[3] *Id.* at 153, 675 S.E.2d at 634 (Martin, J., concurring).

Our Supreme Court has instructed that "[w]hen the proffered expert's familiarity with the relevant standard of care is unclear from the paper record, our trial courts should consider requiring the production of the expert for purposes of voir dire examination." *Id.* (Martin, J., concurring). "[P]articularly when the admissibility decision may be outcome-determinative, the expense of voir dire examination and its possible inconvenience to the parties and the expert are justified in order to ensure a fair and just adjudication." *Id.* (Martin, J., concurring). Accordingly, we reverse the trial court's order which granted summary judgment on all claims which depended on the testimony of Dr. Mosca. We remand this case to the trial court with instructions to conduct a voir dire examination of Dr. Mosca in order to "determine the admissibility of the proposed expert testimony."[4] *Id.* (Martin, J., concurring). Should the trial court, after conducting the voir dire examination, determine that Dr. Mosca is qualified to offer his standard of care opinion to the jury, the trial court is instructed to conduct a new trial in this matter.

## II. ADDITIONAL PRE-TRIAL ISSUES

### A. Discovery

**[3]** Plaintiff argues that the trial court erred in denying (1) the 4 August 2006 motion to compel discovery, and (2) the 6 March 2007 motion to reconsider the order denying the earlier motion. Plaintiff contends that Defendants should have been compelled to answer the following interrogatories:

9. Please list the names and last known home address[es] of all pediatric cardiology patients of [Dr. Hines] who have died while under his care from January 1, 1995 until December 26, 2001.

---

3. Judge Albright stated that he was "having a hard time" with Dr. Mosca's deposition testimony, which he described as "troubling" and "problematic[.]"

4. As stated in the footnote to Justice Newby's dissent in *Crocker*, Justice Martin's concurring opinion, "having the narrower directive, is the controlling opinion . . . and requires the trial court to conduct a voir dire examination of the proffered expert witness." *Crocker*, 363 N.C. at 154, n.1, 675 S.E.2d at 635 n.1 (Newby, J., dissenting) (citation omitted).

10. Please list the names of all patients in the pediatric intensive care unit who died between June 27, 2001 and December 26, 2001, who were under the care of [Dr. Hines].

Plaintiff's motions were denied by orders entered 8 September 2006 and 22 March 2007, respectively.

In general,

[p]arties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. It is not ground for objection that the information sought will be inadmissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence nor is it grounds for objection that the examining party has knowledge of the information as to which discovery is sought.

N.C. Gen. Stat. § 1A-1, Rule 26(b)(1) (2005). " '[O]rders regarding matters of discovery are within the trial court's discretion and are reviewable only for abuse of that discretion.' " *In re Estate of Tucci*, 104 N.C. App. 142, 152, 408 S.E.2d 859, 865-66 (1991) (quoting *Weaver v. Weaver*, 88 N.C. App. 634, 638, 364 S.E.2d 706, 709, *disc. review denied*, 322 N.C. 330, 368 S.E.2d 875 (1988)), *disc. review improvidently allowed*, 331 N.C. 749, 417 S.E.2d 236 (1992). "In addition, the appellant must show not only that the trial court erred, but that prejudice resulted from that error." *Miller*, 174 N.C. App. at 620, 625 S.E.2d at 116 (citing *Bowers*, 122 N.C. App. at 427, 470 S.E.2d at 350). "This Court will not presume prejudice." *Id.*

The North Carolina Supreme Court has cautioned this Court to apply the "abuse of discretion" standard of review "strictly," and has explained that

[f]or well over one hundred years, it has been a sufficiently workable standard of review to say merely that a manifest abuse of discretion must be made to appear from the record as a whole with the party alleging the existence of an abuse bearing that heavy burden of proof.

*Worthington v. Bynum*, 305 N.C. 478, 484-85, 290 S.E.2d 599, 604 (1982). The Supreme Court has also stated that when a trial court makes a discretionary decision, "the court should make appropriate findings of fact and conclusions of law, sufficient to allow appellate review for abuse of discretion." *Roberts v. Madison Cty. Realtors Ass'n, Inc.*, 344 N.C. 394, 401, 474 S.E.2d 783, 788 (1996). "Findings of fact and conclusions of law are necessary on decisions of any motion or order ex mero motu only when requested by a party and as provided by Rule 41(b)." N.C. Gen. Stat. § 1A-1, Rule 52(a)(2) (2005). Failure to make findings upon request constitutes error. *Texas W. Fin. Corp. v. Mann*, 36 N.C. App. 346, 349, 243 S.E.2d 904, 906 (1978). But where no request is made, "it is presumed that the judge, upon proper evidence, found facts sufficient to support [the] judgment." *Holcomb v. Holcomb*, 192 N.C. 504, 504, 135 S.E. 287, 288 (1926) (citing *McLeod v. Gooch*, 162 N.C. 122, 78 S.E. 4 (1913)). "Thus, when no findings are made there is nothing for the appellate court to review." *Kolendo v. Kolendo*, 36 N.C. App. 385, 386, 243 S.E.2d 907, 908 (1978) (citing *Holcomb*, 192 N.C. 504, 135 S.E. 287).

In this case, we conclude that Plaintiff has not met the heavy burden of proving an abuse of discretion. Plaintiff contends that the trial court denied the motions to compel "based on a mere assertion of privilege of Defendants' counsel." In fact, the record before this Court is completely silent as to the basis or bases upon which the trial court relied in denying Plaintiff's motions. Plaintiff does not contend that the trial court announced its reasons for denying the motion to compel at the conclusion of the hearing on that motion, and the transcript of that hearing is not part of the record on appeal. The transcript of the hearing on Plaintiff's motion for reconsideration is part of the record, but the trial court merely took the motions under advisement at the conclusion of the hearing. Neither party asked the trial court to enter findings of fact or conclusions of law in its orders denying the motions to compel, and neither order denying the motions contains findings or conclusions. The orders state only that the motions were "denied." Thus, though we are able to discern the various arguments the parties made in support of their positions on the motion to reconsider, we are wholly unable to discern the trial court's underlying reasoning in denying Plaintiff's motions. Accordingly, we presume that the trial court found facts sufficient to support its orders and that its factual findings were supported by competent evidence. Plaintiff has not met the heavy burden of proving that the trial court abused its discretion in denying Plaintiff's motions to compel discovery. This assignment of error is overruled.

### B. Summary Judgment

Plaintiff contends the trial court erred in granting summary judgment in favor of Defendants on (1) the claim that Defendants negligently failed to transfer Drake to another facility, (2) all claims which depended on Dr. Raptoulis' testimony that Defendants breached the standard of care by failing to perform TEEs during or after the first surgery and during the second surgery, and (3) all claims based on the negligence of Dr. Covitz. Plaintiff argues that Defendants were not entitled to judgment as a matter of law on any of these claims. Plaintiff also argues that, in entering the summary judgment order, Judge Albright improperly overruled Judge Massey's order denying Defendants' motion to dismiss for failure to comply with Rule 9(j).

[4] First, Plaintiff argues that by considering matters outside the pleadings in ruling on Defendants' 9 March 2007 motion to dismiss for failure to comply with Rule 9(j), Judge Massey converted that motion into a motion for summary judgment; therefore, by granting the 29 March 2007 motion for summary judgment, Judge Albright "in effect overruled Judge Massey" in violation of the principle that "[n]o appeal lies from one superior court judge to another." *Greene v. Charlotte Chem. Laboratories, Inc.*, 254 N.C. 680, 693, 120 S.E.2d 82, 91 (1961).

Civil Procedure Rule 9(j) provides in full as follows:

Medical malpractice.—Any complaint alleging medical malpractice by a health care provider as defined in G.S. 90-21.11 in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:

(1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care;

(2) The pleading specifically asserts that the medical care has been reviewed by a person that the complainant will seek to have qualified as an expert witness by motion under Rule 702(e) of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care, and the motion is filed with the complaint; or

(3) The pleading alleges facts establishing negligence under the existing common-law doctrine of res ipsa loquitur.

Upon motion by the complainant prior to the expiration of the applicable statute of limitations, a resident judge of the superior court for a judicial district in which venue for the cause of action is appropriate under G.S. 1-82 or, if no resident judge for that judicial district is physically present in that judicial district, otherwise available, or able or willing to consider the motion, then any presiding judge of the superior court for that judicial district may allow a motion to extend the statute of limitations for a period not to exceed 120 days to file a complaint in a medical malpractice action in order to comply with this Rule, upon a determination that good cause exists for the granting of the motion and that the ends of justice would be served by an extension. The plaintiff shall provide, at the request of the defendant, proof of compliance with this subsection through up to ten written interrogatories, the answers to which shall be verified by the expert required under this subsection. These interrogatories do not count against the interrogatory limit under Rule 33.

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2005). As Judge Albright observed during the hearing on the summary judgment motion, we note that this rule does not provide a procedural mechanism by which a defendant may file a motion to dismiss a plaintiff's complaint. *But see Thigpen v. Ngo*, 355 N.C. 198, 200, 558 S.E.2d 162, 164 (2002) (stating that the trial court granted defendants' "motions to dismiss pursuant to Rules 9(j) and 12(b)(6)"); *Trapp v. Maccioli*, 129 N.C. App. 237, 239, 497 S.E.2d 708, 709 (stating that defendant filed a motion to dismiss "pursuant to Rule 9(j)"), *disc. review denied*, 348 N.C. 509, 510 S.E.2d 672 (1998). The Rules of Civil Procedure provide other methods by which a defendant may file a motion alleging a violation of Rule 9(j). *E.g.*, N.C. Gen. Stat. § 1A-1, Rules 12, 41, and 56 (2005). Rule 9(j) itself, however, does not provide such a method.

[5] Rule 9(j) unambiguously requires a trial court to dismiss a complaint if the complaint's allegations do not facially comply with the rule's heightened pleading requirements. Additionally, this Court has determined "that even when a complaint facially complies with Rule 9(j) by including a statement pursuant to Rule 9(j), if discovery subsequently establishes that the statement is not supported by the facts, then dismissal is likewise appropriate." *Ford v. McCain*, 192 N.C. App. 667, 672, 666 S.E.2d 153, 157 (2008); *McGuire v. Riedle*, 190 N.C. App. 785, 787, 661 S.E.2d 754, 757-58 (2008). In considering whether a

plaintiff's Rule 9(j) statement is supported by the facts, "a court must consider the facts relevant to Rule 9(j) and apply the law to them.' " *McGuire*, 190 N.C. App. at 787, 661 S.E.2d at 757 (quoting *Phillips v. A Triangle Women's Health Clinic, Inc.*, 155 N.C. App. 372, 376, 573 S.E.2d 600, 603 (2002)). In such a case, this Court does not "inquire as to whether there was any question of material fact," nor do we "view the evidence in the light most favorable" to the plaintiff. *Id.* at 787-88, 661 S.E.2d at 757. Rather, " 'our review of Rule 9(j) compliance is *de novo*, because such compliance clearly presents a question of law . . . .' " *Id.* (quoting *Smith v. Serro*, 185 N.C. App. 524, 527, 648 S.E.2d 566, 568 (2007)).

This Court's holding in *McGuire* eviscerates Plaintiff's contention that, by considering matters outside the pleadings in ruling on Defendants' 9 March 2007 motion, the trial court converted that motion into one for summary judgment. In *McGuire*, the defendants filed "motions to dismiss based on Rule 9(j)," and the trial court "entered an order dismissing the suit for failure to comply with Rule 9(j)." 190 N.C. App. at 786, 661 S.E.2d at 756-57. On appeal, the plaintiff argued "that because the trial court considered matters outside the pleadings in reaching its decision, defendants' motions to dismiss based on Rule 9(j) violations were converted to . . . Rule 56 summary judgment motion[s]." *Id.* at 787, 661 S.E.2d at 757. Therefore, the plaintiff argued, this Court should review the evidence in the light most favorable to the plaintiff to determine whether there was any genuine issue of material fact. *See Diggs v. Novant Health, Inc.*, 177 N.C. App. 290, 294, 628 S.E.2d 851, 855 (2006) (stating that, in reviewing an order granting summary judgment, this Court "view[s] the evidence in the light most favorable to the nonmoving party") (citing *Falk Integrated Techs., Inc. v. Stack*, 132 N.C. App. 807, 809, 513 S.E.2d 572, 574 (1999)), *disc. review denied*, 361 N.C. 426, 648 S.E.2d 209 (2007). We rejected the plaintiff's argument, stating that " 'our review of Rule 9(j) compliance is *de novo*, because such compliance clearly presents a question of law . . . .' " *McGuire*, 190 N.C. App. at 787, 661 S.E.2d at 757 (quoting *Serro*, 185 N.C. App. at 527, 648 S.E.2d at 568). Accordingly, we hold that Judge Massey did not convert Defendants' 9 March 2007 motion into a motion for summary judgment by considering matters outside the pleadings. *McGuire*, 190 N.C. App. 787, 661 S.E.2d 754.

In reaching this result, we note that Plaintiff only cites *King v. Durham County Mental Health Developmental Disabilities & Substance Abuse Authority*, 113 N.C. App. 341, 439 S.E.2d 771, *disc.*

*review denied*, 336 N.C. 316, 445 S.E.2d 396 (1994), in support of his argument that Judge Massey converted Defendants' 9 March 2007 motion into a motion for summary judgment. This authority is unavailing as *King* merely stands for the well-established principle that a trial court converts a Rule 12(b)(6) motion into a Rule 56 motion by considering matters outside the pleadings. Moreover, even assuming *arguendo* that Judge Massey converted Defendants' motion into one for summary judgment, *but see McGuire*, 190 N.C. App. 787, 661 S.E.2d 754, we conclude that Judge Albright did not overrule Judge Massey's order. The issue raised by Defendants' 9 March 2007 motion and presented to Judge Massey was

> whether it was 'reasonably expected' that the witness[es] would qualify under Rule 702. In other words, were the facts and circumstances known or those which should have been known to the pleader such as to cause a reasonable person to believe that the witness[es] would qualify as . . . expert[s] under Rule 702.

*Trapp*, 129 N.C. App. at 241, 497 S.E.2d at 711 (footnote omitted). The issue raised by Defendants' 29 March 2007 motion and presented to Judge Albright was whether Plaintiff's witnesses *in fact qualified* as experts under Rule 702. *See id.* (concluding that "although the trial court ultimately resolved the Rule 702 issue against the plaintiff, there [was] ample evidence in [the] record that a reasonable person armed with the knowledge of the plaintiff at the time the pleading was filed would have believed that [its expert] would have qualified as an expert under Rule 702"). Accordingly, Plaintiff's assignment of error is overruled.

**[6]** Second, Plaintiff argues that the trial court erred in granting summary judgment on Plaintiff's claim that Defendants were negligent in failing to transfer Drake to another facility following the second surgery. This argument lacks merit.

In his deposition testimony, Dr. Raptoulis repeatedly asserted that Defendants breached the standard of care by (1) failing to accurately interpret Drake's echocardiograms, (2) failing to order an echocardiogram before the first surgery, and (3) failing to order TEEs. In his affidavit filed after his deposition, however, Dr. Raptoulis added the additional allegation that Defendants breached the standard of care by failing to transfer Drake to another hospital following the second surgery and that this failure caused Drake's death. Even if the trial court erred in striking this portion of Dr. Raptoulis' affidavit, the affidavit is plainly inconsistent with his prior

sworn testimony and does not create a genuine issue of fact concerning Plaintiff's failure to transfer claim. *Pinczkowski v. Norfolk S. Ry. Co.*, 153 N.C. App. 435, 440, 571 S.E.2d 4, 7 (2002) ("[A] party opposing a motion for summary judgment cannot create a genuine issue of material fact by filing an affidavit contradicting his prior sworn testimony."). For his part, Dr. Mosca never stated in his affidavit or his deposition testimony that Defendants breached the standard of care by failing to transfer Drake to another facility. In fact, Dr. Mosca testified in his deposition that "there is [no] standard of care" on the issue. Accordingly, there was no evidence before the trial court that Defendants breached the standard of care by failing to transfer Drake to another hospital, and the trial court, therefore, did not err in granting summary judgment on this issue. This assignment of error is overruled.

[7] Third, Plaintiff argues that the trial court erred in granting summary judgment on all claims which depended on Dr. Raptoulis' testimony that Dr. Hines was negligent in failing to order a TEE during or after the first surgery or during the second surgery. Although Plaintiff concedes that Dr. Raptoulis, a cardiologist, did not specialize in the same specialty as Dr. Hines, a cardiothoracic surgeon, Plaintiff maintains that Dr. Raptoulis should have been allowed to testify because he specialized in a similar specialty and was therefore qualified to testify under Rule 702. Under Rule 702, however, a plaintiff's expert is not qualified to offer testimony merely because the expert specializes in a similar specialty as the defendant. The expert's specialty must also "include[] within its specialty the performance of the procedure that is the subject of the complaint[.]" N.C. Gen. Stat. § 8C-1, Rule 702(b) (2005). The procedures that are the subject of the complaint in this case are the surgeries performed by Dr. Hines, including diagnostic procedures incident to the surgeries. Dr. Raptoulis acknowledged in his deposition that he has "never performed the procedures that are at issue in this case[.]" Because Dr. Raptoulis has never performed the relevant surgical procedures, he was not qualified to testify that those procedures were performed incorrectly. This assignment of error is overruled.

[8] Fourth, Plaintiff argues that the trial court erred in striking that portion of Dr. Raptoulis' affidavit related to Dr. Covitz and in granting summary judgment on his claims based on the alleged negligence of Dr. Covitz. Plaintiff does not cite any authority in support of this argument, and, thus, this assignment of error is deemed abandoned. N.C. R. App. P. 28(b)(6); *see also James River Equip., Inc. v. Mecklenburg*

*Utils., Inc.*, 179 N.C. App. 414, 420, 634 S.E.2d 557, 561 (2006) ("[P]laintiff has cited no authority in support of its argument, and thus has abandoned this assignment of error."), *appeal dismissed and disc. review denied*, 361 N.C. 355, 644 S.E.2d 226 (2007).

## III. TRIAL ISSUES

Plaintiff contends that the trial court committed four errors at trial. First, Plaintiff argues that the trial court erred in limiting Dr. Raptoulis' trial testimony. Plaintiff does not cite any authority in support of this argument and, thus, as discussed *supra*, this assignment of error is deemed abandoned.

**[9]** Second, Plaintiff argues that the trial court erred by "in effect granting a directed verdict during the presentation of . . . Plaintiff's case and dismissing all of Plaintiff's negligence claims except for the lack of informed consent claim." We agree with Defendants that this argument mischaracterizes the trial court's action. In limiting Dr. Raptoulis' trial testimony, the court found under Rule 702 that Dr. Raptoulis was not qualified to offer standard of care testimony concerning claims based on Dr. Hines' alleged negligence in the performance of the surgeries. As discussed in Part II.B above, it is undisputed that Dr. Raptoulis has never performed the surgical procedures that are the subject of the complaint. Accordingly, Dr. Raptoulis was not qualified to testify that Dr. Hines breached the standard of care in performing those surgeries. This assignment of error is overruled.

**[10]** Third, Plaintiff argues that the trial court erred in entering a directed verdict in favor of Defendants on Plaintiff's claim for punitive damages against the corporate Defendants. We disagree.

When ruling on a motion for a directed verdict, a trial court "must view the evidence in the light most favorable to the nonmovant, resolving all conflicts in his favor and giving him the benefit of every inference that could reasonably be drawn from the evidence in his favor." *West v. Slick*, 313 N.C. 33, 40, 326 S.E.2d 601, 605 (1985). The trial court may only grant the motion if "the evidence, when so considered, is insufficient to support a verdict in the nonmovant's favor[.]" *Id.* at 40, 326 S.E.2d at 606. We review a trial court's ruling on a motion for a directed verdict *de novo. Yorke v. Novant Health, Inc.*, 192 N.C. App. 340, 351, 666 S.E.2d at 135.

Punitive damages may be awarded only if the claimant proves that the defendant is liable for compensatory damages and that one of the following aggravating factors was present

and was related to the injury for which compensatory damages were awarded:

(1) Fraud.

(2) Malice.

(3) Willful or wanton conduct.

N.C. Gen. Stat. § 1D-15(a) (2005). Punitive damages may be awarded against a corporation only if "the officers, directors, or managers of the corporation participated in or condoned the conduct constituting the aggravating factor giving rise to punitive damages." N.C. Gen. Stat. § 1D-15(c) (2005).

Plaintiff asserts in his brief that "a physician who is head of a treatment team is tantamount to a manager" within the meaning of G.S. 1D-15(c). Plaintiff acknowledges that there is no authority in this jurisdiction which supports this assertion. Assuming *arguendo* that Dr. Hines was the head of Drake's treatment team, and further assuming that the head of a treatment team is a manager within the meaning of G.S. 1D-15(c), we conclude that Plaintiff cannot show that the entry of directed verdict on the claim for punitive damages against the corporate Defendants was prejudicial. The jury did not find that Dr. Hines was negligent. In the absence of such a finding, Plaintiff's claim for punitive damages against the corporate Defendants necessarily fails. N.C. Gen. Stat. § 1D-15(c). This assignment of error is overruled.

[11] Finally, Plaintiff argues that the trial court erred in denying Plaintiff's request for a special jury instruction on the issue of informed consent and in instructing the jury as it did on that issue. We conclude that Plaintiff has not properly presented this issue for appellate review.

To present an alleged instructional error for appellate review, the party asserting error must include in the record on appeal "a transcript of the entire charge given[.]" N.C. R. App. P. 9(a)(1)(f); N.C. R. App. P. 9(c). "While this rule may seem quite technical, it serves an important practical purpose: it facilitates review of an instruction issue by all three members of our panel in that the parties file but a single copy of the trial transcript, but all three members receive the printed record." *Campbell v. McIlwain*, 163 N.C. App. 553, 555, 593 S.E.2d 799, 801 (2004). In this case, the record on appeal does not include a *transcript* of the entire charge, and the charge is inex-

plicably absent from the verbatim, certified transcript of the trial proceedings. The trial transcript only includes those instructions the trial court gave in response to jury questions. Admittedly, the trial court repeated its instruction on the issue of informed consent in response to a jury question. However, in light of our duty to review a jury charge "contextually and in its entirety[,]" *Bass v. Johnson*, 149 N.C. App. 152, 160, 560 S.E.2d 841, 847 (2002), and an appellant's duty to demonstrate that an instructional error " 'was likely, *in light of the entire charge*, to mislead the jury[,]' " *id.* (emphasis added) (quoting *Robinson v. Seaboard Sys. R.R., Inc.*, 87 N.C. App. 512, 524, 361 S.E.2d 909, 917 (1987), *disc. review denied*, 321 N.C. 474, 364 S.E.2d 924 (1988)), this portion of the transcribed charge is insufficient to allow us to properly review Plaintiff's assigned error. Accordingly, this assignment of error is overruled.

## IV. CONCLUSION

For the foregoing reasons, this case is reversed and remanded to the trial court with instructions to conduct a voir dire examination of Dr. Mosca and, based on this evidentiary foundation, to determine the admissibility of his testimony. *Crocker*, 363 N.C. at 153, 675 S.E.2d at 635 (Martin, J., concurring). If the trial court determines that Dr. Mosca should be allowed to offer his opinion to the jury, the trial court is instructed to conduct a new trial in this matter.

REVERSED AND REMANDED.

Chief Judge MARTIN and Judge McGEE concur.