## GRANTHAM v. CRAWFORD

[204 N.C. App. 115 (2010)]

JUSTIN GRANTHAM, A MINOR CHILD, BY AND THROUGH THE TRUST COMPANY OF STERNE, AGEE & LEACH, INC., HIS GUARDIAN AD LITEM, PLAINTIFF v. ROBERT C. CRAWFORD, M.D., CAROLINA WOMANCARE, P.A., F/K/A ROBERT C. CRAWFORD, M.D., P.A., JOHN DOE; JOHN DOE, M.D.; HIGH POINT REGIONAL HEALTH SYSTEM, D/B/A HIGH POINT REGIONAL HOSPITAL; JOHN DOE P.C. AND JOHN DOE, INC., DEFENDANTS

No. COA09-528

(Filed 18 May 2010)

**Medical Malpractice— Rule 9(j) certification—reasonable expectation of qualifications**

The trial court erred by granting summary judgment on a medical malpractice claim in favor of defendants. Plaintiff reasonably expected that two witnesses would have been qualified under N.C.G.S. § 8C-1, Rule 702, thus satisfying the pleading requirements of N.C.G.S. § 1A-1, Rule 9(j).

Appeal by plaintiff from orders entered 31 October 2008 and 6 November 2008 by Judge John O. Craig, II in Guilford County Superior Court. Heard in the Court of Appeals 26 October 2009.

*Ferguson, Stein, Chambers, Gresham & Sumter, P.A., by Adam Stein, William Simpson and James E. Ferguson, II, for plaintiff-appellant.*

*Smith, Anderson, Blount, Dorsett, Mitchell & Jernigan, L.L.P., by Samuel G. Thompson, Robert E. Desmond and Elizabeth Horton, for Robert C. Crawford, M.D. and Carolina Womancare, P.A. f/k/a Robert C. Crawford, M.D., P.A., defendants-appellees.*

*Carruthers & Bailey, P.A., by Pamela A. Robertson, for High Point Regional Health System d/b/a High Point Regional Hospital, defendant-appellee.*

JACKSON, Judge.

Justin Grantham ("plaintiff"), a minor child, by and through his guardian *ad litem*, appeals the 31 October 2008 and 6 November 2008 orders granting summary judgment of his medical malpractice claim to Robert C. Crawford, M.D. ("Dr. Crawford"); Carolina Womancare, P.A.; and High Point Regional Health System ("High Point Regional") (collectively, "defendants"). For the reasons stated below, we reverse and remand.

GRANTHAM v. CRAWFORD

[204 N.C. App. 115 (2010)]

On 26 March 2008, plaintiff filed a complaint alleging medical negligence and breach of contract against defendants based upon the allegedly negligent delivery of plaintiff on 22 January 1997 and his subsequent neurological injuries. Although defendants include discussion of an earlier complaint in their briefs, plaintiff voluntarily dismissed that complaint and no information regarding it is included in the current record. Plaintiff offered two experts to satisfy the pleading requirement for a medical malpractice suit—Edith Gurewitsch, M.D. ("Dr. Gurewitsch"), and Certified Nurse-Midwife Pamela Scudder Kelly ("CNM Kelly") (collectively, "proposed experts").

Dr. Gurewitsch had spent several rotations during her residency in the early 1990's at LaGuardia Hospital in Queens, New York, a small community hospital run by an HMO. When Dr. Gurewitsch worked there, LaGuardia had approximately four labor rooms, one obstetrical operation room, and an anesthesiologist whom doctors had to call in from home. In 1996, the year preceding the incident in question, Dr. Gurewitsch was a medical fellow in maternal and fetal medicine at New York Hospital, Cornell University Medical Center. She was a licensed physician at the time but was not yet board-certified. During 1996, Dr. Gurewitsch acted as an attending obstetrics-gynecological ("OB-GYN") physician, working independently and supervising residents. Also during that time frame, maternal and fetal medicine attending physicians supervised Dr. Gurewitsch with respect to high risk procedures. Dr. Gurewitsch has never visited High Point, North Carolina, nor High Point Regional.

CNM Kelly was a registered nurse who was certified in midwifery in 1980. She practiced as a CNM in Raleigh, North Carolina, from 1980 through 1990; however, from 1985 through 1990, she did not perform deliveries. CNM Kelly did not maintain her licensure and certification in North Carolina after 1990. From 1990 through 2000, including the year in question, CNM Kelly practiced as a CNM at Bethesda Memorial Hospital in Boynton Beach, Florida. She often delivered babies during her decade at Bethesda Memorial. Bethesda Memorial was a Level 2 hospital at least part of the time during those ten years, had approximately six labor rooms, and had to call in a separate operation room team for Cesarian sections. CNM Kelly has been to High Point and has relatives in the area but was unsure of whether she had visited High Point Regional. Both proposed experts opined that Dr. Crawford and the nursing staff at High Point Regional violated the applicable standards of care during plaintiff's delivery on 22 January 1997.

GRANTHAM v. CRAWFORD

[204 N.C. App. 115 (2010)]

On 1 October 2008, defendants moved for summary judgment based upon North Carolina Rules of Evidence, Rule 702; North Carolina Rules of Civil Procedure, Rule 9(j); and North Carolina General Statutes, section 90-21.12. The trial court conducted a hearing on the motions on 27 October 2008. On 31 October 2008, the trial court granted summary judgment in favor of Dr. Crawford and Carolina Womancare, and on 6 November 2008, it granted summary judgment in favor of High Point Regional. Plaintiff appeals.

Plaintiff contends that he reasonably expected that Dr. Gurewitsch and CNM Kelly would qualify as experts pursuant to Rule 702, thereby satisfying the pleading requirements of Rule 9(j). The trial court, therefore, should not have granted defendants' motion for summary judgment. We agree.

"We review a trial court's ruling on summary judgment *de novo.*" *Barringer v. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. 238, 247, 677 S.E.2d 465, 472 (2009) (citing *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008)). In addition, "[w]hether the pleader could reasonably expect the witness to qualify as an expert under Rule 702 presents a question of law and is therefore reviewable *de novo* by this Court." *Trapp v. Maccioli*, 129 N.C. App. 237, 241 n.2, 497 S.E.2d 708, 711 n.2 (1998) (citing *State v. Chaplin*, 122 N.C. App. 659, 664, 471 S.E.2d 653, 656 (1996)).

Rule 9(j) provides, in relevant part:

Any complaint alleging medical malpractice by a health care provider as defined in G.S. 90-21.11 in failing to comply with the applicable standard of care under G.S. 90-21.12 shall be dismissed unless:

(1) The pleading specifically asserts that the medical care has been reviewed by a person who is reasonably expected to qualify as an expert witness under Rule 702 of the Rules of Evidence and who is willing to testify that the medical care did not comply with the applicable standard of care[.]

N.C. Gen. Stat. § 1A-1, Rule 9(j) (2007). Rule 702(b) sets forth the qualifications for an expert in a medical malpractice case:

In a medical malpractice action as defined in G.S. 90-21.11, a person shall not give expert testimony on the appropriate standard of health care as defined in G.S. 90-21.12 unless the person is a licensed health care provider in this State or another state and meets the following criteria:

(1) If the party against whom or on whose behalf the testimony is offered is a specialist, the expert witness must:

    a. Specialize in the same specialty as the party against whom or on whose behalf the testimony is offered; or

    b. Specialize in a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients.

(2) During the year immediately preceding the date of the occurrence that is the basis for the action, the expert witness must have devoted a majority of his or her professional time to either or both of the following:

    a. The active clinical practice of the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, the active clinical practice of the same specialty or a similar specialty which includes within its specialty the performance of the procedure that is the subject of the complaint and have prior experience treating similar patients; or

    b. The instruction of students in an accredited health professional school or accredited residency or clinical research program in the same health profession in which the party against whom or on whose behalf the testimony is offered, and if that party is a specialist, an accredited health professional school or accredited residency or clinical research program in the same specialty.

N.C. Gen. Stat. § 8C-1, Rule 702(b) (2007). Section 90-21.12 further clarifies that the standards an expert must apply are "the standards of practice among members of the same health care profession with similar training and experience situated in the same or similar communities at the time of the alleged act giving rise to the cause of action." N.C. Gen. Stat. § 90-21.12 (2007).

This Court inquires as to whether plaintiff reasonably expected Dr. Gurewitsch and CNM Kelly to qualify as expert witnesses pursuant to Rule 702, not whether they ultimately will qualify. *Smith v. Serro*, 185 N.C. App. 524, 527, 648 S.E.2d 566, 568 (2007) (citing N.C. Gen. Stat. § 1A-1, Rule 9(j)(1) (2005); *Trapp*, 129 N.C. App. at 241, 497 S.E.2d at 711). "In other words, were the facts and circumstances

known or those which should have been known to the pleader such as to cause a reasonable person to believe that the witness would qualify as an expert under Rule 702." *Trapp*, 129 N.C. App. at 241, 497 S.E.2d at 711 (citing Black's Law Dictionary 1265 (6th ed. 1990) (defining reasonable belief)).

According to our Supreme Court, "[a]ssuming expert testimony is properly qualified and placed before the trier of fact, section 90-21.12 reserves a role for the jury in determining whether an expert is sufficiently familiar with the prevailing standard of medical care in the community." *Crocker v. Roethling*, 363 N.C. 140, 150, 675 S.E.2d 625, 633 (2009) (Martin, J., concurring) (citing N.C. Gen. Stat. § 90-21.12 (2007)). "Our statutes and case law do not require an expert to have actually practiced in the community in which the alleged malpractice occurred, or even to have practiced in a similar community." *Id.* at 151, 675 S.E.2d at 633 (Martin, J., concurring) (citing N.C. Gen. Stat. § 90-21.12; N.C. Gen. Stat. § 8C-1, Rule 702(b) (2007)). "[O]ur law does not prescribe any particular method by which a medical doctor must become familiar with a given community. Book or Internet research may be a perfectly acceptable method of educating oneself regarding the standard of medical care applicable in a particular community." *Id.* (Martin, J., concurring) (citing *Coffman v. Roberson*, 153 N.C. App. 618, 624-25, 571 S.E.2d 255, 259 (2002), *disc. rev. denied*, 356 N.C. 668, 577 S.E.2d 111 (2003)) (internal quotation marks omitted).

In the instant case, Dr. Gurewitsch was a licensed physician—she had received her license in 1992, five years before the incident in question; she worked in the same speciality as Dr. Crawford—both specialized in obstetrics; and in the year prior to the incident, she spent a majority of her time in either clinical practice or teaching—she spent all of her time as a medical fellow, practicing obstetrics and gynecology and teaching residents. Therefore, she satisfies the three basic elements of Rule 702(b). We agree with plaintiff that defendants' arguments concerning Dr. Gurewitsch's being supervised during the year in question and her lack of board certification at the time go to the weight of her testimony, rather than to her initial qualification.

CNM Kelly also satisfies Rule 702(b)—she had been certified as a nurse-midwife in North Carolina in 1980 and became dual-certified as a registered nurse and nurse-midwife in Florida in 1990; she and the nurses in the case *sub judice* all specialized in obstetrics; and in the year prior to the incident, she spent the majority of her time actively practicing obstetrical nursing at a hospital. The fact that she had not

been involved in delivering babies in North Carolina for a decade—but rather had been a preceptor for medical students and then performed deliveries in Florida—again goes to the weight of the testimony, not the threshold qualification.

The major concern for both proposed experts is section 90-21.12, which requires that an expert witness apply the standard of practice from "the same or similar communities[.]" N.C. Gen. Stat. § 90-21.12. Our Supreme Court's decision in *Crocker, supra*, provides helpful analysis as to whether the proposed experts' depositions and affidavits reveal sufficient familiarity with High Point Regional as it relates to their experiences in community hospitals. We note that all parties in the instant case argue that *Crocker* is inapplicable, because unlike *Crocker*, the current case is not a "close case." However, each party contends that these facts *clearly* are in his or its favor. We disagree.

As is true in the case *sub judice*, in *Crocker* a discrepancy appeared between the knowledge to which the expert testified in his deposition and the knowledge included in his subsequent affidavit. In *Crocker*, "Dr. Elliott's [the proposed expert's] deposition testimony tended not to support the admission of his testimony at trial." 363 N.C. at 150, 675 S.E.2d at 633 (Martin, J., concurring). He was unsure about significant information, including the level of the hospital at issue, the number of beds it had, and facts about the community in which it was situated. *Id.* at 150-51, 675 S.E.2d at 633 (Martin, J., concurring).

> Dr. Elliott's affidavit, on the other hand, indicated that he had researched and was knowledgeable about the standard of care in Goldsboro[,] . . . [including] "the size of the population [of Goldsboro], the level of care available at the hospital, the facilities and the number of health care providers for obstetrics," and "the prevailing standard of care for handling shoulder dystocia in the same or similar community to Goldsboro."

*Id.* at 151, 675 S.E.2d at 633 (Martin, J., concurring) (quoting Dr. Elliott's affidavit). Similarly, both Dr. Gurewitsch and CNM Kelly shared knowledge in their affidavits with respect to the community of High Point, its population, the per capita income there, the number of beds in High Point Regional, and the number of beds in the obstetrics unit, including one operating room for Cesarian sections. They both also stated that they had practiced in community hospitals "with similar equipment and facilities as High Point Regional Hospital and in an

area of similar per capita income." However, their deposition testimonies several months earlier generally had been lacking such specific information.

Even the depositions, though, contained some evidence of similarities between the hospitals in which the experts had practiced and High Point Regional. For instance, CNM Kelly stated that her hospital was a Level 2 for at least a portion of the time she worked there during the relevant time period; she also knew that, similar to High Point Regional, the staff at her hospital had to call in an operating room team for Cesarian sections. Of particular relevance is CNM Kelly's reference to the policies and procedures of High Point Regional during her deposition. CNM Kelly specifically quoted the applicable policies of High Point Regional and explained that the nurses did not follow these policies and procedures during plaintiff's delivery. Clearly, the policies of the specific hospital at issue are relevant evidence of that hospital's local standard of care. Similarly, Dr. Gurewitsch stated her knowledge that High Point Regional was either a Level 1 or Level 2 hospital in 1997, that it had to call anesthesia from home, and that it had a separate operating room team for Cesarian sections. Although she had not reviewed any bylaws, policies, or procedures of High Point Regional, she did later review that information. Dr. Gurewitsch may have been more explicit than CNM Kelly that she applied a standard of care specific to High Point Regional and to Dr. Crawford when providing her expert opinions. The paper record, therefore, may be ambiguous—*i.e.* a close case—with respect to the extent of these experts' bases of knowledge.

When this Court previously has interpreted *Crocker*, we reached a similar conclusion. The expert in *Barringer*, Dr. Mosca, spoke "in the language of N.C. Gen. Stat. § 90-21.12" in his affidavit, and yet, his deposition testimony created questions as to whether he had applied a national standard of care when evaluating the defendant's actions. 197 N.C. App. at 247, 677 S.E.2d at 472-74. Dr. Mosca's deposition testimony revealed that he was uncertain "whether Winston-Salem was indeed similar to the communities with which he was familiar." *Id.* at 251, 677 S.E.2d at 474. Although neither Dr. Gurewitsch nor CNM Kelly seemed unsure of the standard she applied to the actions of Dr. Crawford and the nurses of High Point Regional, defendants nonetheless question whether the proposed experts' knowledge with respect to the hospital is sufficient to make their testimonies relevant. Therefore, in accordance with both *Crocker* and *Barringer*, we reverse the trial court's grant of summary

judgment and remand to the trial court to conduct a *voir dire* examination of the proposed experts.[1]

For these reasons, we reverse the grant of summary judgment and remand to the trial court for further action consistent with this opinion.

Reversed and remanded.

Chief Judge MARTIN and Judge ERVIN concur.

─────────

1. According to Justice Newby in his dissent, "Justice Martin's opinion, having the narrower directive, is the controlling opinion . . . and requires the trial court to conduct a voir dire examination of the proffered expert witness." *Crocker*, 363 N.C. at 154 n.1, 675 S.E.2d at 635 n.1 (Newby, J., dissenting) (citing *Marks v. United States*, 430 U.S. 188, 193, 51 L. Ed. 2d 260, 266 (1977) ("When a fragmented [Supreme Court of the United States] decides a case and no single rationale explaining the result enjoys the assent of five Justices, 'the holding of the Court may be viewed as that position taken by those Members who concurred in the judgments on the narrowest grounds . . . .' ")).