WATERWAY DRIVE PROP. OWNERS' ASS'N, INC. v. TOWN OF CEDAR POINT

[224 N.C. App. 544 (2012)]

WATERWAY DRIVE PROPERTY OWNERS' ASSOCIATION, INC., ET AL., PLAINTIFFS

v.

TOWN OF CEDAR POINT, BRANCH BANKING AND TRUST COMPANY, FIRST CITIZENS BANKS & TRUST COMPANY, WACHOVIA BANK, NATIONAL WACHOVIA BANK, NATIONAL ASSOCIATION CAPITAL BANK, AND BANK OF AMERICA CORPORATION, DEFENDANTS

No. COA12-614

Filed 18 December 2012

1. **Highways and Streets—private road—dedication—no acceptance—no withdrawal**

The trial court did not err in a declaratory judgment action by finding the road at issue to be a private road and thus granting summary judgment to plaintiffs. Although there was a dedication of the road, there was no evidence of acceptance of the dedication, either express or implied, including no evidence of official acts following the inclusion of the road on an official map. Defendant's argument that withdrawal was ineffective because the dedication had been accepted necessarily failed because there was no such acceptance. Finally, defendant's argument on the basis of necessary ingress and egress to any lots or parcels sold along it also failed.

2. **Highways and Streets—private road—prescriptive easement—permissive use presumed**

The trial court did not err in a declaratory judgment action by finding the road at issue to be a private road and thus granting summary judgment to plaintiffs. Defendant failed to meet its burden to establish an easement by prescription and thus permissive use was presumed.

3. **Appeal and Error—affidavit stricken from record—no basis for appellate review—no prejudice**

Plaintiff's argument that the trial court erred in a declaratory judgment action by striking an affidavit from the record was dismissed. Neither party requested that the trial court make findings of fact and conclusions of law in its order granting plaintiffs' motion to strike the affidavit so there was nothing upon which the Court of Appeals could review the trial court's discretionary order. Further, even if the record had been adequate to permit review, defendant failed to show it was prejudiced by the decision of the trial court.

**4. Appeal and Error—argument not supported in brief—dismissed**

Defendant's argument that the trial court erred in a declaratory judgment action by denying its cross-motion for partial summary judgment which would have determined the street in question to be public was dismissed as defendant failed to make a clear argument in the body of its brief.

Judge Stroud concurring in part and dissenting in part.

Appeal by Defendant from order entered 14 February 2012 by Judge Benjamin G. Alford in Superior Court, Carteret County and order entered 13 December 2011 by Judge Jack W. Jenkins in Superior Court, Carteret County. Heard in the Court of Appeals 24 October 2012.

*Poyner Spruill, LLP by J. Nicholas Ellis and Christopher R. Boothe, for Plaintiffs-Appellees.*

*Kirkman, Whitford, Brady, Berryman & Farias, P.A. by Neil B. Whitford and Jane A. Gordon, for Defendant-Appellant Town of Cedar Point.*

BEASLEY, Judge.

The Town of Cedar Point (Defendant) and several financial institutions (included in the suit for notice purposes only) appeal from the trial court's entry of summary judgment in favor of Waterway Drive Property Owners' Association, Inc., by and through its members, (Plaintiffs) declaring Front Street/Waterway Drive a private road. For the following reasons, we affirm the orders of the trial court.

## I. Factual Background

On 13 August 2010 Plaintiffs brought suit against Defendant to (1) establish by declaratory judgment that Defendant has no ownership interest to the area of Cedar Point known as "Front Street," which forms at least part of the street named Waterway Drive; (2) in the alternative, request compensation through inverse condemnation for a "taking" of the Front Street area; (3) in the alternative, request compensation through inverse condemnation for a "taking" of the portion of Waterway Drive outside of the Front Street right-of-way (encroachment area)[1]; and (4) request a temporary restraining order and pre-

---

1. It is unclear exactly when the name changed from Front Street to Waterway Drive, but both parties contend it occurred around 1990. It is also unclear to what

liminary injunction. Defendant filed an answer generally denying the allegations of Plaintiffs' complaint and raising a counterclaim also requesting declaratory judgment that (1) Front Street is a public right of way based upon dedication and acceptance; (2) Front Street/Waterway Drive and the encroachment area are public rights of way based upon prescriptive easement; and (3) no inverse condemnation has occurred as Defendant "is not seeking to exercise control or claim a right-of-way over Front Street/Waterway Drive by inverse condemnation or any other legal theory" if the trial court were to determine that it is not a public right of way by either dedication or prescription. The parties took depositions, submitted affidavits, and filed cross-motions for partial summary judgment on the declaratory judgment claim.

The evidence forecast by the parties' submissions to the trial court shows the following facts. It is undisputed that Front Street/Waterway Drive was dedicated to public use. In 1936, a landowner named John S. Jones filed a subdivision plat ("1936 Plat") in Carteret County wherein he indicated that a portion of his land abutting the Intracoastal Waterway was to be used for a fifty-foot wide right-of-way named "Front Street." From around the 1950s until about the early 1970s, the area designated as Front Street between Hill Street and Bell Street was used for vehicular traffic.[2] During the 1970s, motorists stopped using Front Street as a through-street. However, the property owners along the street continued to use it as an access road and considered it a private drive.

In 1978, Carteret County franchised a cable TV company to install cable in public streets in the area; cable was installed on Front Street. This was later franchised by Defendant in 1989. Defendant was incorporated in 1988. In 1988, Defendant franchised West Carteret Water Corporation to construct and maintain a water main system, which was installed on Front Street, along with a fire hydrant.

In 1989, Defendant adopted a Resolution granting the mayor authority to accept dedications of certain streets, of which Front

extent the two overlap. Part of the Front Street right-of-way has been eroded and as a result, the roadbed "shifted" to its current location. It appears from the record that at least part of Waterway Drive is outside of the Front Street dedication, and Plaintiff's third claim in the alternative was for inverse condemnation of that portion which was outside of the dedication over which defendant has asserted ownership. We will refer to this area as the "encroachment area."

2. Much of the evidence before the trial court was in the form of affidavits from local residents discussing their childhood memories of the area. As a result, the evidence discusses decades or portions thereof, rather than particular months or years.

Street/Waterway Drive was not included. A catch-all provision was included to extend that authority roughly one month into the future for any dedications offered in that time. In 1990, Defendant recorded a Notice of Acceptance that claims Defendant previously accepted several dedicated streets, including Front Street.

Around 1990, Plaintiffs paved a portion of Front Street at their own expense, renamed it Waterway Drive without petitioning Defendant for a name change, and posted a sign reading "Private Road" at the entrance. Defendant never objected to these actions. The eastern end of the street remains unpaved. Residents receive mail at post boxes at one end of the street, not at each individual residence.

There is evidence of Defendant clearing debris (consisting of a carpet) from the area of Waterway Drive following a hurricane in 1996. In 1998, Defendant had an additional fire hydrant installed on Waterway Drive. In 2001, Defendant contracted for garbage trucks to use the street to pick up garbage from the property residents. There is evidence of Defendant patching asphalt in 2006 and 2010.

In 2005, Waterway Drive was added to Defendant's "Powell Bill" map. Defendant uses this map to submit to the state how many miles of streets it has within its borders so that it may receive maintenance money for them. Neither the North Carolina Department of Transportation (NCDOT) nor Carteret County has any record of the maintenance of Front Street/Waterway Drive. "From and after July 1, 1931, the exclusive control and management and responsibility for all public roads in the several counties shall be vested in the Department of Transportation." N.C. Gen. Stat. § 136-51 (2011).

There is evidence of payments by the property owners, in the form of personal checks, for maintenance and repair of the road from the 1970s through the 1990s and of the Association's by-laws and agreement that it would be responsible for maintenance and repairs. There is evidence in the form of a deed, deposition, and town minutes, of a private easement existing on Waterway Drive for the use of property owners.

In 2006, Defendant sent the property owners a letter stating that Defendant had previously accepted the dedication and planned on making improvements to the street. This prompted discussions between the parties such that in 2010 the Plaintiffs formally petitioned Defendant to abandon the street, maintaining the claim that it is a private street. Defendant held a public hearing and declined. Plaintiffs filed a declaration of withdrawal, followed by the instant lawsuit.

Prior to the summary judgment hearing, Defendant submitted the affidavit of John R. Jones, son of the original Front Street dedicator. Plaintiffs noticed a deposition of Mr. Jones and issued and served a subpoena for his appearance at the deposition. Mr. Jones, through counsel, objected to the subpoena and moved to quash it on the grounds that it imposed an undue burden on him for health reasons. In response, Plaintiffs filed a motion to compel Mr. Jones to appear to be deposed or, in the alternative, to strike Mr. Jones' affidavit on the grounds that lack of an opportunity to depose Mr. Jones would "unduly prejudice Plaintiffs." The trial court granted Plaintiffs' motion to strike the Jones affidavit and denied their motion to compel by an order entered 13 December 2011.

As to the motions by both parties for partial summary judgment, the trial court gave the following order, in pertinent part, on 14 February 2012:

> 3. Plaintiffs' Motion for Partial Summary Judgment is granted and the relief sought in Plaintiffs' First claim for relief is allowed based on the Court's ruling that Waterway Drive is a private road.
>
> 4. Cedar Point's Cross-motion for Partial Summary Judgment is denied.
>
> . . . .
>
> 6. This is a final adjudication of all issues in this case.[3]

Defendant timely filed notice of appeal to this Court on 14 March 2012.

## II. Dedication and Acceptance

"Our standard of review of an appeal from summary judgment is de novo; such judgment is appropriate only when the record shows

---

3. We note on our own accord that despite the fact that the trial court granted only partial summary judgment, the order resolved all issues in this case. It appears that the trial court actually determined, by its terse ruling that "Waterway Drive is a private road" that there was no genuine issue of material fact as to any issue such that: (1) the Plaintiffs were entitled to withdraw the dedication of Front Street, so the area shown on the 1936 Plat was not a public road by dedication; and (2) Defendant had not acquired any prescriptive rights as to either the area shown on the dedication map or to the encroachment area. This is because the trial court expressly granted the relief sought in Plaintiff's first claim of its complaint, which requested both recognition of the legal effect of Plaintiff's withdrawal and recognition of Defendant's lack of right to enforce any purported easement. As this is then a final ruling on all issues, the appeal is not interlocutory and it is properly before this Court.

that 'there is no genuine issue as to any material fact and that any party is entitled to a judgment as a matter of law.'" *In re Will of Jones*, 362 N.C. 569, 573, 669 S.E.2d 572, 576 (2008)(quoting *Forbis v. Neal*, 361 N.C. 519, 524, 649 S.E.2d 382, 385 (2007)).

[1] Defendant first argues that the trial court erred in finding Waterway Drive to be a private road and thus in granting summary judgment to Plaintiffs. Specifically, Defendant first asserts that Front Street/Waterway Drive[4] is a public municipal street by dedication. We disagree.

There is no argument that a dedication was not made, so it is not necessary to examine the merits of the dedication. Thus, our discussion turns on the merits of any purported acceptance.

> A dedication of a road is a revocable offer until it is accepted on the part of the public in some recognized legal manner and by a proper public authority. A proper public authority is a governing body having jurisdiction over the location of the dedicated property, such as . . . an incorporated town . . . or any public body having the power to exercise eminent domain over the dedicated property. Accepting in some recognized legal manner includes both express and implied acceptance.

*Kraft v. Town of Mt. Olive*, 183 N.C. App. 415, 420-21, 645 S.E.2d 132, 137 (2007)(citations omitted)(internal quotation marks omitted). Defendant argues that the dedication was accepted expressly through formal acceptance, implicitly through acts of control, and through its inclusion on an official map. It also argues that Plaintiffs attempt to withdraw the dedication is ineffective as a matter of law. We examine each in turn.

### a. Express Acceptance

"Express acceptance can occur, *inter alia*, by 'a formal ratification, resolution, or order by proper officials, the adoption of an ordinance, a town council's vote of approval, or the signing of a written instrument by proper authorities.'" *Kraft*, 183 N.C. App. at 420-21, 645 S.E.2d at 137 (citation omitted). Defendants claim that the dedication was accepted through the Resolution in 1989 and by the Notice of Acceptance of Dedication in 1990.

---

4. We will hereinafter refer to the street in question as "Waterway Drive" only, unless the context requires otherwise.

Plaintiff correctly asserts that the Resolution does not mention either Front Street or Waterway Drive. The catch-all provision pertains only to those dedications made from the date of the Resolution (27 June 1989) to 31 July 1989. The catch-all states, "Such other streets as shall be offered for dedication prior to July 31, 1989." The word 'shall' indicates a prospective perspective. Further, the Resolution only serves to grant the mayor power to accept; it does not itself accept any dedications. Consequently, the Resolution is not, by itself, sufficient evidence of express acceptance of the dedication.

Thus, Defendant turns to the Notice of Acceptance: this document declares that the town has previously accepted several dedications, including Front Street. However, this still fails to satisfy the requirement of an express acceptance because it does not *actually accept* the dedication, but merely notes a previous acceptance of which there is no express record. *See Kraft*, 183 N.C. App. at 420-21, 645 S.E.2d at 137 (requiring some sort of written express acceptance or evidence of a vote). Even if this Notice was intended as an acceptance, our precedent deems intent and acceptance as separate requirements, despite the fact that the former informs the latter. *Kraft*, 183 N.C. App. at 418, 645 S.E.2d at 135 ("Where an intention to dedicate is found, and *followed by an acceptance* by the public, the dedication is complete." (emphasis added)).

Further, the validity of the Notice is called in to question, as according to the testimony of the Town Administrator, several of the streets listed in this Notice as having been previously accepted were and are still maintained by the Department of Transportation and were never actually accepted for dedication by the town.

We are not able to conclude that such a document provides evidence of express acceptance. Consequently, we find that neither document independently establishes acceptance and that, when read together, the documents do nothing more than loosely establish an intent to accept, either prospectively or retrospectively. Because this is not evidence of actual acceptance, we find no express acceptance of the dedication.

### b. Implied Acceptance

An implicit dedication occurs when: (1) the dedicated property is used by the general public; and (2) coupled with control of the road by public authorities for a period of twenty years or more. To be clear, it is not

> enough for the public to use the alley for twenty years, but the public authorities must assert control over [the alley].

*Kraft*, 183 N.C. App. at 420-21, 645 S.E.2d at 137 (alteration in original)(citations omitted)(internal quotation marks omitted). "[M]erely providing municipal services to homeowners in a subdivision within a municipality does not constitute an implied acceptance by the municipality of dedication of a road when the homeowners have paid for those services by the payment of their *ad valorem* taxes." *Concerned Citizens of Brunswick County Taxpayers Ass'n v. Holden Beach Enterprises, Inc.*, 95 N.C. App. 38, 46, 381 S.E.2d 810, 815 (1989), *rev'd on other grounds sub nom. Concerned Citizens of Brunswick County Taxpayers Ass'n v. State ex rel. Rhodes*, 329 N.C. 37, 404 S.E.2d 677 (1991).

Defendant argues that its control over the street is evidenced from its improvements (a water main in 1988 and fire hydrants in 1988 and 1998; cable TV lines in 1989), repairs (cleaning storm debris after hurricanes in 1996, 1999, and 2006), and patching asphalt in 2006 and 2010, plus sending garbage trucks down it weekly from 2001 on, adding it to the town's map in 2005, refusing to abandon it on Plaintiff's request in 2010, and applying for a permit to improve it in 2010.

In *Kraft*, this Court found town acceptance of a dedication implicit by making improvements and repairs to the road.

> First, the Town paved the alley in approximately 1976. Second, the Town, without a utility easement, dug up portions of the alley to maintain and repair the sewer lines and other utilities. Third, the Town provided municipal service to the alley such as garbage, police, and fire service. Finally, as to the length of public use, there is evidence in the record indicating that the public and the Town had used the alley for over forty (40) years. Accordingly, under the rule in *Gregorie*, this evidence establishes that the Town has implicitly accepted the dedication of the alley.

*Kraft*, 183 N.C. App. at 421, 645 S.E.2d at 137. This is distinguishable from the case *sub judice*.

In Defendant's own deposition, it stated that the trash collection was paid for by citizen's taxes and garbage fees. Further, this activity started in 2001, less than twenty years ago. Excepting only the addi-

tion of the water main, fire hydrants, and cable lines, none of Defendant's claims establish control for the requisite period of twenty years, if they even establish control at all. Thus, if these three additions dating back to the 1980's fail to establish control, there can be no implied acceptance, regardless of the control that may have begun in 2001, because the length of the time of control is not long enough.

Defendants fail to establish control over Waterway Drive with the additions of the water main, fire hydrants, and cable lines. Unlike in *Kraft*, where the utilities work on the road in question was performed by the town itself, *see* 183 N.C. App. at 421, 645 S.E.2d at 137, the water main work on Waterway Drive was performed by the water company. The town did not perform the work. The same is true of the cable TV lines. This case is further distinguishable from *Kraft* because the town's own recorded minutes from 27 April 2010 state that the taxpayers paid for the installation of the hydrants but the town is not respons-ible for their maintenance or for the water main maintenance. Thus, not only does *Concerned Citizens of Brunswick County* appear to resolve this due to the fact that the homeowners own taxes paid for the hydrant installation, *see* 95 N.C. App. at 46, 381 S.E.2d at 815, but the town has maintained no control over the street as a result of the installation because they have no maintenance responsibility.

Because these three additions which date back to the 1980s fail to establish control and Defendant provides no other evidence of control for the requisite period of time, there is no implied acceptance evidenced on the record.

### c. Inclusion on Town Map

Defendants next claim that the town manifested acceptance through inclusion of the street on an official map in 2005. "[S]imply including the road on the town map is insufficient evidence of the town's intent to accept the road for public use." *Wiggins v. Short*, 122 N.C. App. 322, 326, 469 S.E.2d 571, 575 (1996). More evidence is needed: "Acceptance may be manifested not only by maintenance and use as a public street, but by official adoption of a map delineating the area as a street, *followed by* other official acts recognizing its character as such." *Tower Dev. Partners v. Zell*, 120 N.C. App. 136, 141, 461 S.E.2d 17, 21 (1995)(emphasis added)(citation omitted). As discussed above, there is no evidence of official acts following this inclusion in 2005 that would suffice to mark acceptance of the road.

d. Abandonment/Withdrawal

Defendant argues that Plaintiffs' attempt to withdraw the dedication was ineffective as a matter of law due to the fact that the dedication had already been accepted, Plaintiffs are not successors-in-interest to the dedicator, and/or the street is necessary for access to the lots should they be sold. We disagree.

North Carolina law presumes any dedicated land abandoned if it has "not . . . been actually opened *and* used *by the public* within 15 years from and after the dedication thereof." N.C. Gen. Stat. § 136-96 (2011)(emphasis added). While the presumption does not occur until a filing of withdrawal is made, the clock begins to run on the fifteen year period from the time of dedication. *Id.* "The dedication of a street . . . may not be withdrawn if the dedication has been accepted **and** the street, *or any part of it,* is actually opened and used by the public." *Tower Dev. Partners*, 120 N.C. App. at 142, 461 S.E.2d at 21 (first emphasis added)(citation omitted). Thus, the street must both have some portion used *and* be accepted before the ability to withdraw the dedication is nullified. If the street is never accepted, withdrawal may still be made. And, if withdrawal occurs after the failure to open the street and fifteen years of nonuse by the public from the time of dedication, the dedicated land is presumed abandoned upon that filing.

Defendant's argument that withdrawal is ineffective because the dedication had been accepted necessarily fails based on our above discussion in which we found no such acceptance. With regard to Defendant's argument that the individual property owners are not the successors in interest to the original owner, John Jones, the record is full of references to Plaintiff's members as owners of the properties through which the street runs and which derive from John Jones' original property. Further, this argument is waived for failure to raise it before the trial court. *See Regions Bank v. Baxley Commercial Props., LLC,* 206 N.C. App. 293, 298-99, 697 S.E.2d 417, 421 (2010)(citations omitted)("In order to preserve an issue for appellate review, the appellant must have raised that specific issue before the trial court to allow it to make a ruling on that issue. . . . [I]t cannot 'swap horses between courts in order to get a better mount [on appeal].' ").

Finally, Defendant's argument on the basis of necessary ingress and egress to any lots or parcels sold along it also fails. Plaintiff provided deposition testimony, evidence in a property owner's deed (Defendant's own exhibit), and statements from the Town's meeting

minutes indicating that a private easement existed for property owners to use the street for ingress and egress, which runs to all heirs, assigns, and successors in interest. Thus, this argument is without merit; public access is not required in order to ensure ingress or egress to the property owners and their successors in interest.

We note that there is ambiguity in the record as to whether Defendant accepted some portion of the original dedication, now referred to as Sunset Drive, prior to Plaintiffs' withdrawal of the Waterway Drive portion or whether this portion was abandoned by Defendant. Such acceptance would render withdrawal of any other portion of the original dedication, including Waterway Drive, ineffective as a matter of law. *See Tower Dev. Partners*, 120 N.C. App. at 142, 461 S.E.2d at 21. However, Defendant fails to make this argument in its brief and we are not at liberty to make it for Defendant. N.C. R. App. P. 28(b)(6) ("Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned.").

### III.  Easement by Prescription

[2]

> In order to prevail in an action to establish an easement by prescription, a plaintiff must prove the following elements by the greater weight of the evidence: (1) that the use is adverse, hostile or under claim of right; (2) that the use has been open and notorious such that the true owner had notice of the claim; (3) that the use has been continuous and uninterrupted for a period of at least twenty years; and (4) that there is substantial identity of the easement claimed throughout the twenty-year period. An easement by prescription is not favored in the law, and it is the better-reasoned view to place the burden of proving every essential element on the party who is claiming against the interests of the true owner.

*Deans v. Mansfield*, ___ N.C. App. ___, ___, 707 S.E.2d 658, 662 (2011)(citations omitted)(internal quotation marks, brackets, and ellipses omitted). North Carolina law presumes the use of another's land is permissive, and, as such, the party claiming the easement must rebut this presumption with a showing of hostile use. *Yadkin Valley Land Co., L.L.C. v. Baker*, 141 N.C. App. 636, 639, 539 S.E.2d 685, 688 (2000). Thus, we need not examine the evidence of permissive use provided by Plaintiffs unless Defendant's evidence successfully rebuts this presumption sufficiently for a prima facie showing of hostility.

"Mere use alone of a purported easement is not sufficient to establish the element of hostile use . . . ." *Koenig v. Town of Kure Beach*, 178 N.C. App. 500, 504, 631 S.E.2d 884, 888 (2006). In *Dickinson v. Pake*, 284 N.C. 576, 201 S.E.2d 897 (1974), our Supreme Court found that even the "slight maintenance" of "raking leaves and scattering oyster shells in the roadway" may constitute hostile use under a claim of right. Id. at 583, 201 S.E.2d at 901. However, the "slight maintenance" found in this case was continuous for the requisite period. *Id.* There was no single instance of raking leaves or spreading shells that operated to make the use hostile, but rather the continued maintenance "to keep [the road] in passable condition" over the entire use did so. *Id.*

Here, the only evidence of hostile use other than the public using the road for non-automotive travel is sporadic maintenance by the town, including removal of debris, installation of water mains and fire hydrants, and patching potholes. By Defendant's own admission in its deposition, it does not consider its removal of debris after hurricanes maintenance. Such removal of debris is better categorized as waste or refuse removal, a service that the property owners paid for in their property taxes. There is no evidence on the record to indicate whether the installation of a water main and fire hydrants was permissive or not. Thus this fact does not help Defendant meet its burden. Considering, as discussed above, the taxpayers themselves paid for the installation of these hydrants, the evidence actually suggests that such installation was indeed permissive.

There are only two instances of pothole repairs and they occur in 2006 and 2010. Even though the use by the public may have continued for the requisite twenty years, because that alone is insufficient, *see Koenig*, 178 N.C. App. at 504, 631 S.E.2d at 888, the Defendants' evidence does not exemplify a hostile use until 2006. Thus, even if these two single acts are sufficient to put Plaintiffs on notice of Defendant's claim of right, these acts do not meet the required length of time to claim a prescriptive easement. Consequently, Defendant failed to meet its burden and permissive use is presumed.

### IV. John Jones Affidavit

[3] Defendant argues that the trial court erred in striking the John Jones affidavit from the record. "We review an order striking an affidavit for abuse of discretion. The appellant must show not only that the trial court abused its discretion in striking an affidavit, but also that prejudice resulted from that error. This Court will not presume

prejudice." *Barringer v. Forsyth Cnty. Wake Forest Univ. Baptist Med. Ctr.*, 197 N.C. App. 238, 246, 677 S.E.2d 465, 471-72 (2009)(citations omitted)(internal quotation marks omitted).

> [W]hen a trial court makes a discretionary decision, the court should make appropriate findings of fact and conclusions of law, sufficient to allow appellate review for abuse of discretion. . . . Failure to make findings upon request constitutes error. But where no request is made, it is presumed that the judge, upon proper evidence, found facts sufficient to support the judgment. Thus, when no findings are made there is nothing for the appellate court to review.

*Barringer*, 197 N.C. App. at 253, 677 S.E.2d at 475 (citations omitted)(internal quotation marks and brackets omitted).

"[O]ur review is limited to the record" before us. *Kerr v. Long*, 189 N.C. App. 331, 334, 657 S.E.2d 920, 922 (2008). There is nothing in the record indicating that any party requested that the trial court make findings of fact and conclusions of law in its order granting Plaintiffs' motion to strike Mr. Jones' affidavit. Accordingly, there is nothing upon which we can review the trial court's discretionary order and we dismiss Defendant's argument on this point. *See Barringer*, 197 N.C. App. at 253, 677 S.E.2d at 475.

However, we note that even if the record were adequate to permit our review, Defendant fails to show it was prejudiced by the decision of the trial court.

"Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." N.C. Gen. Stat. § 1A-1, Rule 56(e)(2011).

First, Defendant relies on the fact that the affiant, John R. Jones, is the son of the dedicator, John S. Jones, and original owner of the plats across which the street passes. However, this is irrelevant as it is clear from the affidavit that John R. Jones is not the owner of any of the lots that touch the street. Thus, his intent for the street to be public is of no matter here.

Second, Defendant argues that the affidavit is needed to explain county commissioner minutes in the 1950s and demonstrate that gov-

ernment funds were expended on the maintenance of the street in the mid-1950s. However, the affidavit does not allege personal knowledge of the county commissioner minutes, as it fails to allege that the affiant was present at these meetings. Further, it is clear from the affidavit that these government funds were not expended by Defendant because the town had not yet been incorporated. While the affiant freely admits he does not know where these government funds came from, it is irrelevant because this single act of clearing the street following a storm is not sufficient to establish control, as discussed above. Additionally, as Plaintiffs argue, the evidence on the record includes the deposition of the Clerk to the County Board of Commissioners, who declared that there were no records of any such maintenance ever occurring or being requested. Consequently, Defendant has failed to establish that they were prejudiced the trial court's striking of this affidavit. The decision of the trial court should be affirmed.

### V. Denial of Defendant's Cross-Motion

[4] Lastly, we note that Defendant argues that the trial court erred in denying its cross-motion for partial summary judgment which would have determined the street in question to be public. "Issues not presented in a party's brief, or in support of which no reason or argument is stated, will be taken as abandoned." N.C. R. App. P. 28(b)(6). Defendant asserts this argument in its brief under its "Issues Presented" section, but fails to make a clear argument in the body of the brief. It is thus abandoned. It is concluded in the first section of Defendant's brief after each argument for a finding of acceptance of the dedication that the trial court erred in this manner, despite being set out as a separate issue. However, even if this is sufficient, the findings above preclude a finding of error on this point.

For the reasons stated above, the order of the trial court is affirmed.

Affirmed.

Judge ELMORE concurring.

Judge STROUDS concurring in part and dissenting.

STROUD, Judge concurring in part and dissenting in part.

I agree with the majority that the trial court did not abuse its discretion in striking the John Jones affidavit. I therefore concur in section IV of the majority's opinion. I must respectfully dissent as to the

remainder, however, as I believe that the evidence shows that the Town of Cedar Point has expressly accepted the portion of Front Street now part of Waterway Drive and that there are genuine issues of material fact as to whether plaintiffs' withdrawal was effective and whether the Town has acquired a prescriptive easement as to the portion of Waterway Drive outside of the original Front Street dedication.

## VI. Interlocutory appeal

Although I agree that this appeal is from a final order and is thus subject to review, the majority does not address why this appeal is not interlocutory except by a footnote. I believe that we should address this issue more fully. Both parties had filed motions for partial summary judgment which limited the scope of their request to the issues regarding dedication of the street as shown on the map and excluding the additional area, known as the "encroachment area." The plaintiff's motion for *partial* summary judgment requested that the trial court grant the relief sought in their first claim for relief: which was specifically for

> a decision pursuant to the Uniform Declaratory Judgment Act, N.C. Gen. Stat. § 1-253 et seq., holding that any public dedication of the Front Street Area and any public right-of-way thereby created have been abandoned by the public; that any such public dedication has been effectively and conclusively withdrawn upon the recording of the Declaration of Withdrawal; and that no person, including Cedar Point, shall have any right or cause of action to enforce any public easement or right-of way over the Front Street area."

Defendant's' motion is also. entitled as a motion for *partial* summary judgment and requests summary judgment on the following issues:

> a. For a judgment declaring that the right-of-way of Front Street between Hill and Bell Streets as shown on the map titled "Part of the John S. Jones Property 'known as' Cedar Point," dated June 8, 1936 and recorded in Map Book 1, Page 113, Carteret County, Register of Deeds office is a public municipal street within Cedar Point's municipal street system;[Fn 1] and,

> b. For a judgment dismissing Plaintiffs' First, Second and Third Claims for Relief.

[Fn 1]

It is factually undisputed that part of the 1936 Front Street right-of-way has been washed away and that the travelled portion of the street in these areas has shifted to the north out of the original 1936 right-of-way lines (the "encroachment area"). However, at the time of filing this response and cross motions Cedar Point is not prepared to argue that the undisputed facts as a matter of law establish the encroachment area as part of the Cedar Point municipal street system. Cedar Point does strenuously contend that the encroachment area has become a part of its municipal street system, and reserves the right to either amend its cross motion to include this issue on a summary judgment proceeding, or to carry the issue to a trier of fact at trial.

A ruling only upon both of the motions for *partial* summary judgment would still leave open the issues raised in (1) plaintiffs' third claim, which was "in the alternative" to the first claim and (2) defendant's counterclaim as to a determination of any prescriptive easement rights over the encroachment area, as specifically noted in footnote 1 of defendant's motion for partial summary judgment. Yet it also appears from the record that THYE parties both presented evidence and argued fully both the issues of dedication and prescriptive easement at the summary judgment hearing and no party has raised any objection that the trial court improperly considered any issues at that hearing.[1] Thus it appears that the trial court actually determined, by its terse ruling that "Waterway Drive is a private road" that there was no genuine issue of material fact as to any issue such that: (1) the plaintiffs were entitled to withdraw the dedication of Front Street, so the area shown on the 1936 Plat was not a public road by dedication; and (2) defendant had not acquired any prescriptive rights as to either the area shown on the dedication map or to the encroachment area. As this is a final ruling on all issues, the appeal is not interlocutory.

---

1. The record does not include a transcript of the summary judgment hearing, so I must rely only on the documents which were filed with the trial court and which are in our record. Further, even if the parties have only moved for partial summary judgment, it is not error for the trial court to grant summary judgment on all claims where both parties are given the opportunity to submit evidence on all claims before the trial court. *See A-S-P Associates v. City of Raleigh*, 298 N.C. 207, 212, 258 S.E.2d 444, 448 (1979) (holding that summary judgment on all claims was proper in that case because evidence was submitted on all claims, although the relevant motion only requested summary judgment as to some of the claims before the trial court).

## VII.  Summary Judgment

I respectfully disagree with the majority's analysis as to the issues of acceptance and withdrawal. Therefore, I dissent as to section II of the majority opinion.

### A.  Standard of Review'

> We review a trial court order granting or denying a summary judgment motion on a *de novo* basis, with our examination of the trial court's order focused on determining whether there is a genuine issue of material fact and whether either party is entitled to judgment as a matter of law. As part of that process, we view the evidence in the light most favorable to the nonmoving party.

*Beeson v. Palombo*, ___ N.C. App. ___, ___, 727 S.E.2d 343, 346-47 (2012).

### B.  Dedication of Front Street

"Dedication is a form of transfer whereby an individual grants to the public rights of use in his or her lands." *Kraft v. Town of Mt. Olive*, 183 N.C. App. 415, 418, 645 S.E.2d 132, 135 (2007) (citation omitted). "Because North Carolina does not have statutory guidelines for dedicating streets to the public, the common law principles of offer and acceptance apply." *Tower Development Partners v. Zell*, 120 N.C. App. 136, 140, 461 S.E.2d 17, 20 (1995). The original owner's intent to "dedicate must clearly appear, though such intention may be shown by deed, by words, or by acts." *Id.* (quotation marks, citation, and emphasis omitted).

> A dedication of a road to the general public is a revocable offer until it is accepted on the part of the public in some recognized legal manner and by a proper public authority. A 'proper public authority' is a governing body having jurisdiction over the location of the dedicated property, such as a municipality, an incorporated town, a county, or any public body having the power to exercise eminent domain over the dedicated property.

*Bumgarner v. Reneau*, 105 N.C. App. 362, 366, 413 S.E.2d 565, 568 (quotation marks and citations omitted), *aff'd as modified*, 332 N.C. 624, 422 S.E.2d 686 (1992). Acceptance by a proper public authority can be express or implied. *Metcalf v. Black Dog Realty, LLC*, 200 N.C. App. 619, 631, 684 S.E.2d 709, 718 (2009).

1. Express Acceptance of Dedication

"Express acceptance can occur, *inter alia*, by a formal ratification, resolution, or order by proper officials, the adoption of an ordinance, a town council's vote of approval, or the signing of a written instrument by proper authorities." *Kraft*, 183 N.C. App. at 420, 645 S.E.2d at 137 (citation and quotation marks omitted). Both parties agree that the 1936 plat dedicates the portion of John S. Jones' land known as Front Street to public use, so the first contested issue is whether the Town of Cedar Point accepted the 1936 dedication of the right-of-way known as Front Street prior to plaintiffs' withdrawal of that dedication in 2010. Plaintiffs contend that Cedar Point's 1989 resolution ("1989 Resolution") authorizing the town to accept certain streets and the town's subsequent 1990 "Notice of Acceptance of Dedication" ("1990 Notice") are so fundamentally flawed as to be insufficient to constitute an express acceptance of the 1936 dedication. While I agree that neither document is a model to be emulated, for the following reasons I would hold that, read together, they are more than sufficient to constitute an express acceptance.

On 27 June 1989 the Town of Cedar Point Board of Commissioners passed a resolution authorizing "the Mayor, as agent for the town, to accept the dedication of" six specific streets and "7. Such other streets as shall be offered for dedication prior to July 31, 1989." In the following year, 1990, the Town of Cedar Point issued a "Notice of Acceptance of Dedication", stating that Cedar Point

> has previously accepted the dedication of the following streets within said Town:
>
> . . . .
>
> 4. Front Street
> Described as that portion of the street named "Front Street" as the same is shown on that Map of the John S. Jones Property, known as Cedar Point, recorded in Map Book 1, Page 113, Carteret County Registry, that runs between Bell and Hill Street.

Both the 1989 Resolution and the 1990 Notice of Acceptance were also recorded with the Carteret County Register of Deeds. The question is whether these provisions are sufficient to constitute an acceptance by official written instrument.

An acceptance is a manifestation of intent to be bound following an offer. *See Parker v. Glosson*, 182 N.C. App. 229, 232, 641 S.E.2d

735, 737 (2007). In the context of a dedication, an acceptance must demonstrate the intent of the town or municipality to assent to the offer of the dedicator.

Dedications are normally considered under the rubric of the common law of offer and acceptance. *See Tower Development Partners,* 120 N.C. App. at 140, 461 S.E.2d at 20. However, where the acceptance is by resolution or ordinance, it is proper to construe the text purported to accept the dedication under the rules for statutory construction. *See Clark v. City of Charlotte,* 66 N.C. App. 437, 439, 311 S.E.2d 71, 72 (1984) (stating that the rules of statutory construction apply to local ordinances). A basic rule of statutory construction is that courts should "give effect to the intent of the legislature." *Wal-Mart Stores East, Inc. v. Hinton,* 197 N.C. App. 30, 39, 676 S.E.2d 634, 642 (2009) (quotation marks and citation omitted).[2] "The primary indicator of legislative intent is statutory language; the judiciary must give clear and unambiguous language its plain and definite meaning." *Id.* (quotation marks and citation omitted). However, "[w]here a literal reading of a statute will lead to absurd results, or contravene the manifest purpose of the Legislature, as otherwise expressed, the reason and purpose of the law shall control and the strict letter thereof shall be disregarded." *Taylor v. Crisp,* 286 N.C. 488, 496, 212 S.E.2d 381, 386 (1975) (quotation marks and citation omitted). Thus, in considering the 1989 Resolution and the 1990 Notice, the fundamental question we must consider is whether the Town of Cedar Point manifested an intent to accept the Front Street dedication. I would find that the Town did manifest such intent.

The 1989 Resolution clearly and in plain language indicates that the Town of Cedar Point authorized the Mayor to accept dedicated streets with that resolution. The only question is whether provision 7 includes the Front Street dedication. Plaintiffs contend that the language of provision 7 of the 1989 Resolution is clear. That provision uses the future tense "as shall be offered . . . prior to July 31, 1989[,]" which would not cover Front Street, and not the past "as have been offered" or future perfect "as shall have been offered[,]" which would.

---

2. The same would be true if I considered the acceptance under the common law of contracts. *See Mosely v. WAM, Inc.,* 167 N.C. App. 594, 598-99, 606 S.E.2d 140, 143 (2004) (stating that "[i]f a question arises concerning a party's assent to a written instrument, the court must first examine the written instrument to ascertain the intention of the parties." (citation omitted)); *Miller v. Russell,* ___ N.C. App. ___, ___, 720 S.E.2d 760, 764 (2011) ("The ultimate test in construing any written agreement is to ascertain the parties' intentions in light of all the relevant circumstances." (citations, quotation marks, and brackets omitted)).

However, reading provision 7 of the 1989 Resolution literally would mean that the Board of Commissioners meant to authorize only the acceptance of the named streets and any other street that would happen to be dedicated in the month between 27 June and 31 July 1989. There is no reason to think that the Board intended this resolution to have that effect. *See State v. Humphries*, 210 N.C. 406, 410 186 S.E. 473, 476 (1936) (observing that "[i]f the grammatical sense of the words is inconsistent with the purpose of the statute or would involve absurdity, the grammatical sense must be modified or extended to avoid such inconvenience.").

"[W]hen the meaning of a statute is in doubt, reference may be made to the title and context of an act to determine the legislative purpose." *Preston v. Thompson*, 53 N.C. App. 290, 292, 280 S.E.2d 780, 782, *disc. rev. denied*, 304 N.C. 392, 285 S.E.2d 833 (1981). The 1989 Resolution is entitled "Resolution Authorizing the Town of Cedar Point to Accept Certain Streets Within the Town." The creation of public rights-of-way by acceptance of a dedication is one of the important powers of a city or town. *See* N.C. Gen. Stat. § 160A-296(a) (establishing that cities have general authority over public streets, including to acquire "land therefor by dedication"). Given that the Town of Cedar Point was only incorporated in 1988, the Town could not have formally accepted past dedications much earlier than this resolution.

The intent of this resolution as a whole is to accept *past* dedications of rights of way as part of the initial organization and establishment of the Town of Cedar Point. All six of the listed streets were dedicated prior to the Resolution, as they are listed in the Resolution by their recorded plat numbers. Read literally, provision 7 would be the only future-looking provision in an otherwise backward-looking document, and a quite limited one at that. Therefore, it is more rational to read provision 7 as authorizing acceptance of all dedications that "shall have been dedicated" before 31 July 1989. *See Burgess v. Joseph Schlitz Brewing Co.*, 298 N.C. 520, 524, 259 S.E.2d 248, 251 (1979) (stating that "the words and phrases of a statute must be interpreted contextually, in a manner which harmonizes with the other provisions of the statute and which gives effect to the reason and purpose of the statute." (citations omitted)). Read this way, it operates as a catch-all backward-looking authorization of acceptance of prior dedications that, after 1988, fall under the jurisdiction of Cedar Point.

Read in context with the above authorization and rules of construction, the 1990 Notice confirms that the Town intended to accept Front Street. Although replete with errors, such as accepting streets

that had not been dedicated and inconsistent dates, the 1990 Notice indicates that the Mayor, with authorization from the Town, did in fact accept Front Street. In the relevant parts, this Notice describes the Front Street dedication in detail and notes that it has been accepted. The Notice specifically mentions Front Street, describes the location of the right-of-way, and references the correct plat. This document could be read as having the opposite tense problem from the 1989 resolution in that it refers to the relevant dedication as having been previously accepted (as opposed to stating that the dedication "is hereby accepted" or something to that effect). It could also be read as confirming the prior acceptance of Front Street as expressed in the 1989 Resolution, indicating that the Town believed that Front Street was "previously accepted" by the 1989 Resolution. Either way, as it clearly references the Front Street dedication in a document indicating that the listed streets have been accepted, it demonstrates the intent of the Town of Cedar Point to accept the dedication made by John S. Jones. I would hold that this intent to accept manifested in an official writing signed by the Mayor of the Town of Cedar Point, read together with the 1989 Resolution authorizing acceptance of rights-of-way for the newly-formed town, is more than sufficient to constitute express acceptance of the Front Street dedication.

2.  Abandonment and Withdrawal

"It is now well settled that the dedication of a street may not be withdrawn, if the dedication has been accepted and the street *or any part of it* is actually opened and used by the public." *Food Town Stores, Inc. v. City of Salisbury*, 300 N.C. 21, 29, 265 S.E.2d 123, 129 (1980) (quotation marks, citation, and parentheses omitted, emphasis in original).[3] Having concluded that the Town of Cedar Point accepted the Front Street dedication, I must consider whether the dedication remained revocable under N.C. Gen. Stat. § 136-96 at the time plaintiffs filed their 2010 withdrawal of the dedication. If no part of a road dedicated to public use is so used within the fifteen years after the initial dedication, that dedication "shall be thereby conclusively presumed to have been abandoned by the public[,]" N.C. Gen. Stat. § 136-96, and becomes "subject to withdrawal" under § 136-96. *Steadman v. Town of Pinetops*, 251 N.C. 509, 516, 112 S.E.2d 102, 107 (1960). However, "no abandonment . . . shall be presumed until the dedicator or some one or more of those claiming under him file and

---

3. It is therefore possible for a dedication to remain revocable under N.C. Gen. Stat. § 136-96 even after acceptance, such as where the acceptance is by resolution or written instrument, but the dedication is never opened as a street and used by the public.

cause to be recorded in the register's office of the county where such land lies a declaration withdrawing" the dedication. N.C. Gen. Stat. § 136-96.

Moreover, abandonment is not presumed retroactively once a withdrawal is filed. *Janicki v. Lorek*, 255 N.C. 53, 58, 120 S.E.2d 413, 417 (1961) (holding that if the dedication is accepted and opened to the public "at any time before withdrawal, the dedication is complete and it may not thereafter be withdrawn." (citation and emphasis omitted)); *see Osborne v. Town of North Wilkesboro*, 280 N.C. 696, 700, 187 S.E.2d 102, 104 (1972) (noting that "[i]f the authorities for the statutory period fail to use the dedicated strips, the right to use is destroyed *by a withdrawal*." (emphasis added)). Thus, a dedication only becomes *subject to* withdrawal under § 136-96 after fifteen years of non-use, but the conclusive presumption of abandonment does not become effective until the filing of the withdrawal. *See Steadman*, 251 N.C. at 516, 112 S.E.2d at 107; *Janicki*, 255 N.C. at 58, 120 S.E.2d at 417. If the withdrawal was filed after both public acceptance and use of at least part of the dedicated land, that withdrawal will not be effective, even if the land remained unused for the initial fifteen year period after the dedication. *Janicki*, 255 N.C. at 58, 120 S.E.2d at 417.

Here, although the Town's acceptance was significantly more than fifteen years after the initial dedication, plaintiffs' withdrawal was filed only in 2010. Another part of Front Street, the section east of Jones Street now called Sunset Drive, has been formally opened, paved, and incorporated into the town's street system. It is not clear when that section of Front Street was accepted and opened by the Town. "[T]he dedication of a street may not be withdrawn, if the dedication has been accepted and the street *or any part of it* is actually opened and used by the public." *Food Town Stores, Inc.*, 300 N.C. at 29, 265 S.E.2d at 129 (quotation marks, citation, and parentheses omitted, emphasis in original). Thus, if the Town had opened Sunset Drive before plaintiffs' withdrawal, the withdrawal of the portion of Front Street on Waterway Drive would be ineffective. Therefore, I would hold that there is a genuine issue of material fact as to whether plaintiffs' withdrawal was effective.

C. Prescriptive easement over encroachment area

I would also hold that there is a genuine issue of material fact as to whether the Town acquired a prescriptive easement over that area of Waterway Drive outside of the Front Street dedication. Therefore, I dissent from Section III of the majority opinion.

It is undisputed that at least part of the street known as Waterway Drive includes land outside of the 1936 Front Street dedication. Defendants contend that they have prescriptive rights over that encroachment area outside of Front Street and that the trial court erred in granting summary judgment in plaintiffs' favor on this claim. Plaintiffs counter that the public's use of Waterway Drive was permissive and therefore the public could not acquire rights to that land by prescription. Plaintiff also argues that defendant is required to show public maintenance of Waterway Drive in order to establish a *prima facie* case for a public prescriptive easement. The majority holds that even if maintenance is not required, defendant failed to establish a prescriptive easement because they cannot show that public use was hostile.

> In order to prevail in an action to establish an easement by prescription, a plaintiff must prove the following elements by the greater weight of the evidence: (1) that the use is adverse, hostile or under claim of right; (2) that the use has been open and notorious such that the true owner had notice of the claim; (3) that the use has been continuous and uninterrupted for a period of at least twenty years; and (4) that there is substantial identity of the easement claimed throughout the twenty-year period. An easement by prescription is not favored in the law, and it is the better-reasoned view to place the burden of proving every essential element on the party who is claiming against the interests of the true owner.
>
> . . . .
>
> In North Carolina, the law presumes that the use of a way over another's land is permissive or with the owner's consent unless the contrary appears. A mere permissive use of a way over another's land, however long it may be continued, can never ripen into an easement by prescription. To establish a hostile use of another's land, it does not require a heated controversy or a manifestation of ill will; rather, a hostile use is a use of such nature and exercised under such circumstances as to manifest and give notice that the use is being made under a claim of right.

*Deans v. Mansfield,* ___ N.C. App. ___, ___, 707 S.E.2d 658, 662 (2011) (quotation marks, citations, brackets, and ellipses omitted).

Here, there is substantial evidence of public use, but conflicting evidence about whether the use was in such a manner as to "manifest and give notice that the use is being made under a claim of right." *Id.* Use by the public of a right-of-way alone is generally insufficient to establish hostile use. *Koenig v. Town of Kure Beach*, 178 N.C. App. 500, 504, 631 S.E.2d 884, 888 (2006) (observing that "[m]ere use alone of a purported easement is not sufficient to establish the element of hostile use."); *see Roten*, 135 N.C. App. at 475, 521 S.E.2d at 144-45 (holding that evidence of twenty continuous years of public use of the road in question failed to rebut the permissive use presumption). "Notice of a claim of right may be given in a number of ways, including . . . by open and visible acts such as repairing or maintaining the way over another's land." *Johnson v. Stanley*, 96 N.C. App. 72, 75, 384 S.E.2d 577, 579 (1989) (citations omitted).

The evidence tending to support hostile use is as follows: The public has used Waterway Drive as a pedestrian and bicycle right-of-way for over twenty years, including since the residents erected a "Private Drive" sign along Waterway Drive in the early 1980s. The West Carteret Water Company installed a water main under Waterway Drive and the Town of Cedar Point installed fire hydrants along the street, although there is no evidence indicating whether this action was permissive or not.[4] There is no evidence of discussions between members of the public and the landowners about Waterway Drive, but according to the affidavits submitted by defendant, the public believed Waterway Drive was a public road and that they had a right to use it. Defendant also highlights that Waterway Drive has never been closed to public use. That fact, however, supports plaintiffs' position more than defendant's because evidence of an ineffective objection to or attempted closure of the easement tends to support a finding of hostility. *See Concerned Citizens of Brunswick County Taxpayers Ass'n v. State ex rel. Rhodes*, 329 N.C. 37, 54, 404 S.E.2d 677, 688 (1991).

Additionally, the Town performed some minor maintenance of Waterway Drive. The Town filled in two potholes in 2006 and 2010 and removed some debris following hurricanes in the 1990s and 2000s. There is no evidence that the Town asked the landowners' permission to patch Waterway Drive. Hostile use can be shown in part by

4. I note that plaintiff filed a motion that we take judicial notice of some documents regarding the water main and hydrants which were not submitted to the trial court for purposes of the summary judgment hearing. We have denied that motion by separate order.

maintenance of the path of an easement without permission from the landowner. *See Johnson*, 96 N.C. App. at 75, 384 S.E.2d at 579; *Town of Sparta v. Hamm*, 97 N.C. App. 82, 87, 387 S.E.2d 173, 176-77 (1990) (holding that where the town maintained the street in question, albeit poorly, hostile use had been established); *West v. Slick*, 313 N.C. 33, 58-60, 326 S.E.2d 601 615-16 (1985) (holding that where the state had built and graded the road, filled in ruts, and cleared branches, there was sufficient evidence to reach the jury).

Although the maintenance here was quite minor, our Supreme Court has found similarly minor maintenance to be sufficient evidence of hostile use to avoid a directed verdict. In *Dickinson v. Pake*, the Supreme Court found that the evidence was sufficient to rebut the presumption of permissive use and that the case should have gone to the jury. *Dickinson v. Pake*, 284 N.C. 576, 584, 201 S.E.2d 897, 902 (1974). The plaintiffs in that case had used the unpaved road for over twenty years to access their property and "performed what slight maintenance was required to keep [the road] in passable condition." *Id.* at 582-83, 201 S.E.2d at 901. That maintenance consisted of raking leaves and scattering seashells on the roadway. *Id.* at 583.

As here, the landowners in *Dickinson* also modified the road by placing "shrubbery and old tires along one edge of the road so as to restrict travel to the well-defined roadway." *Id.* at 582. There was no indication that the plaintiffs had ever asked for or received permission to use the road. *Id.* at 583, 201 S.E.2d at 902. The Court held that this evidence "would permit, but not compel a jury to find" in the plaintiffs' favor. *Id.* at 583, 201 S.E.2d at 902. The majority finds that *Dickinson* is distinguishable because the maintenance in that case was continual. I note, however, that the court in *Dickinson* did not mention the frequency of the repairs or when they began.

Plaintiff contends that the evidence only supports a conclusion that the public's use was permissive. The landowners believed Waterway Drive was private, and were aware of the public's use of Waterway Drive, but thought that the public's use was merely permissive and therefore never directly objected to the public's use. "Mere failure of the owner of the servient tenement to object—even if he was aware of the use—is insufficient" to establish hostile use, *Caldwell v. Branch*, 181 N.C. App. 107, 111, 638 S.E.2d 552, 555 (2007), *disc. rev. denied*, 361 N.C. 690, 654 S.E.2d 248. Here, although an objection was never directly expressed, the "Private Drive" sign could communicate a lack of permission.

Perhaps most significantly, plaintiffs paved a large portion of Waterway Drive themselves without asking for permission from the Town. This fact, while highly relevant, *see Town of Sparta*, 97 N.C. App. at 87, 387 S.E.2d at 176 ("The defendants appearing at the Town Council meeting and apparently asking for their consideration in paving the 'street' gives rise to a strong inference that he thought it was a public way since the town could not pave a private driveway."), is not dispositive. In *Concerned Citizens*, the landowner and his predecessor in interest had graded and paved the road in question. *Concerned Citizens*, 329 N.C. at 41-42, 404 S.E.2d at 680. The associated costs were paid entirely by the landowner. *Id*. Nevertheless, the Supreme Court found that the evidence in that case went "far beyond what this Court has required to establish the use as being 'hostile,' thus repelling any inference that it is permissive." *Id*. at 51, 404 S.E.2d at 686.

Thus, neither party's cited facts are dispositive on the issue of hostile use. Any individual piece of the evidence as presented here would likely be insufficient to rebut the permissive use presumption. Taken together, however, I would hold that they demonstrate a genuine issue of material fact as to whether the public's use of Waterway Drive was hostile and that the trial court erred in granting summary judgment to plaintiffs on defendants' claim of prescriptive rights in the encroachment area of Waterway Drive outside of the 1936 Front Street dedication.

## VIII. Conclusion

For the foregoing reasons, I would reverse the trial court's order granting summary judgment for plaintiffs and remand for entry of summary judgment for the Town on the issue of acceptance. I would also reverse the trial court's order as to the issue of plaintiffs' withdrawal and a prescriptive easement over the encroachment area and remand for further proceedings regarding the parties' rights to that area. Therefore, I respectfully dissent in part.